**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *In re Walgreens Boots Alliance, Inc. Securities Litigation* | Master File No.: 1:24-cv-05907 |
| | Hon. Mary M. Rowland |
| | <u>CLASS ACTION</u> |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO**
**DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

1

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..............................................................................................................1

ARGUMENT ....................................................................................................................2

    I.    The Opposition Confirms That the Amended Complaint Fails to Plead a
    False or Misleading Statement With the Required Specificity ...............................2

        A.    The PSLRA's Safe Harbor Protects Walgreens' Projections and
            Future Plans ...............................................................................................3

            1.    Statements Regarding Projections and Future Plans Are
                    Forward Looking .........................................................................3

            2.    Meaningful Cautionary Language Accompanied the
                    Forward-Looking Statements........................................................5

            3.    Plaintiffs Do Not Plead That the Forward-Looking
                    Statements Were Made With Actual Knowledge of Their
                    Falsity .........................................................................................6

        B.    Optimistic Statements About VillageMD Are Inactionable Puffery ...........7

        C.    Defendants' Beliefs Are Inactionable Opinions .........................................8

        D.    Plaintiffs Identify No False or Misleading Statement.................................9

    II.    The Opposition Cites No Pled Facts Supporting a Strong Inference of
    Scienter ................................................................................................................13

        A.    The Opposition Cites No Pled Facts That Defendants Were Aware
            of Contradictory Information.....................................................................14

        B.    Investor Updates and Interactions With Analysts Do Not Support
            Scienter .....................................................................................................16

        C.    The Opposition Cites No Pled Facts That Defendants Ordered the
            2022 Clinic Abandonment or 2023 Layoffs .............................................17

         D.    Plaintiffs' Reliance on the Core Operations Doctrine Is Misplaced..........18

        E.    The Departure and Transitions of Ms. Brewer and Messrs. Kehoe
            and Driscoll Are Not Indicative of Scienter .............................................20

        F.    Plaintiffs' Section 20(a) Claims Must Be Dismissed ...............................20

CONCLUSION.................................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adient plc Sec. Litig.*,
  2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ............................................................................14

*In re Advance Auto Parts, Inc., Sec. Litig.*,
  2020 WL 599543 (D. Del. Feb. 7, 2020) ..................................................................................9

*Allison v. Oak St. Health, Inc.*,
  2023 WL 1928119 (N.D. Ill. Feb. 19, 2023) ..........................................................................19

*In re Avon Sec. Litig.*,
  2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019)..........................................................................15

*Azar v. Grubhub, Inc.*,
  2021 WL 4077327 (N.D. Ill. Sept. 7, 2021) ................................................................9, 14, 19

*Baron v. Smith*,
  380 F.3d 49 (1st Cir. 2004)........................................................................................................5

*In re Baxter Int'l Inc. Sec. Litig.*,
  2021 WL 100457 (N.D. Ill. Jan. 12, 2021).................................................................10, 18, 19

*Blatt v. Corn Prods. Int'l, Inc.*,
  2006 WL 1697013 (N.D. Ill. June 14, 2006) ............................................................................7

*In re Campbell Soup Co. Sec. Litig.*,
  2020 WL 7022655 (D. N. J. Nov. 30, 2020) ..........................................................................17

*Chew v. Moneygram Int'l, Inc.*,
  2024 WL 4346522 (N.D. Ill. Sept. 30, 2024) ........................................................................15

*Chow v. Archer-Daniels-Midland, Co.*,
  2025 WL 790854 (N.D. Ill. Mar. 12, 2025).......................................................................19, 20

*City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*,
  565 F. Supp. 3d 478 (S.D.N.Y. 2021).......................................................................................9

*City of Taylor Police and Fire Ret. Sys. v. Zebra Techs. Corp.*,
  8 F.4th 592 (7th Cir. 2021) .......................................................................................................7

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent.*,
  477 F. Supp. 3d 123 (S.D.N.Y. Aug. 6, 2020).......................................................................15

*City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
  2020 WL 6118571 (N.D. Ill. Oct. 16, 2020), *aff'd sub nom. City of Taylor
  Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592 (7th Cir. 2021)...........................13

*Cornielsen v. Infinium Cap. Mgmt.*,
  LLC, 916 F.3d 589 (7th Cir. 2019) ................................................................... 13, 17

*Desai v. General Growth Properties, Inc.*,
  654 F. Supp. 2d 836 (N.D. Ill. 2009) ..................................................................... 19

*Fryman v. Atlas Fin. Holdings, Inc.*,
  2022 WL 1136577 (N.D. Ill. Apr. 18, 2022) ........................................................... 8

*In re Golden Heaven Grp. Holdings Ltd. Sec. Litig.*,
  2025 WL 714171 (C.D. Cal. Mar. 3, 2025) ....................................................... 4, 16

*Golub v. Gigamon Inc.*,
  847 F. App'x 368 (9th Cir. 2021) ............................................................................ 5

*Harris v. Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999) ............................................................................. 5, 6

*Heavy & Gen. Laborers' Local 472 & 172 Pension & Annuity Funds v. Fifth
  Third Bancorp*,
  2022 WL 1642221 (N.D. Ill. May 24, 2022) ......................................................... 10

*Hedick v. The Kraft Heinz Co*,
  2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ........................................... 4, 6, 15, 19

*Heinze v. Tesco Corp.*,
  971 F.3d 475 (5th Cir. 2020) .................................................................................. 5

*Johnson v. Tellabs, Inc.*,
  262 F. Supp. 2d 937 (N.D. Ill. 2003) ...................................................................... 5

*Joyce v. Amazon.com, Inc.*,
  2025 WL 835054 (W.D. Wa. Mar. 17, 2025) ......................................................... 16

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ................................................................................. 10

*In re KLX, Inc. Sec. Litig.*,
  232 F. Supp. 3d 1269 (S.D. Fl. 2017) .................................................................... 16

*Lauria v. Biosante Pharm., Inc.*,
  968 F. Supp. 2d 951 (N.D. Ill. 2013) ...................................................................... 2

*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) ................................................................................. 19

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ............................................................................................ 8, 9

*Phoenix Ins. Company, Ltd. v. ATI Physical Therapy, Inc.*,
  690 F. Supp. 3d 862 (N.D. Ill. 2023) .................................................................... 3, 8

*Pierrelouis v. Gogo, Inc.*,
  2021 WL 1608342 (N.D. Ill. Apr. 26, 2021) ........................................................ 6, 18

iii

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v.*
    *Allscripts-Misys Healthcare Solutions, Inc.*,
    778 F. Supp. 2d 858 (N.D. Ill. 2011) ...................................................................7

*Pub. Empls.' Ret. Sys. of Mississippi v. TreeHouse Foods, Inc.*,
    2018 WL 844420 (N.D. Ill. Feb. 12, 2018) ....................................................4, 8

*Rensin, Tr. of Rensin Joint Tr. v. United States Cellular Corp.*,
    755 F. Supp. 3d 1048 (N.D. Ill. 2024) .........................................................13, 14

*Roberts v. Zuora*,
    2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) .................................................15

*Ross v. Career Educ. Corp.*,
    2012 WL 5363431 (N.D. Ill. Oct. 30, 2012) ...............................13, 14, 19, 20

*Searls v. Glasser*,
    64 F.3d 1061 (7th Cir. 1995) .............................................................................8

*Seeks v. Boeing Co.*,
    752 F. Supp. 3d 992 (N.D. Ill. 2024) ...............................................................7

*Stavros v. Exelon Corp.*,
    266 F. Supp. 2d 833 (N.D. Ill. 2003) ...............................................................6

*Swartzendruber v. Colony Cap., Inc.*,
    2020 WL 7754008 (C.D. Cal. Dec. 10, 2020) .................................................17

*Tellabs Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .................................................................................10, 14

*In re Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*,
    604 F. Supp. 2d 1188 (N.D. Ill. 2009) .............................................................18

*Vallabhaneni v. Endocyte, Inc.*,
    2016 WL 51260 (S.D. Ind. Jan. 4, 2016) .........................................................5

*West Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622 (N.D. Ill. 2020) ...........................................................7, 14

**Statutes**

15 U.S.C. § 78u-4(b)(1) ...............................................................................................10

15 U.S.C. § 78u-5(c)(1) .................................................................................................5

15 U.S.C. § 78u-5(c)(1)(A)(i) .......................................................................................3

15 U.S.C. § 78u-5(c)(1)(B)(i) .......................................................................................3

**INTRODUCTION**

Plaintiffs' Opposition confirms they have fallen well short of the heightened standard for pleading securities fraud.[1]  Plaintiffs press a far-fetched theory of fraud: that Walgreens knew VillageMD—which experienced quarter-over-quarter growth and reached over $1.6 billion in sales—was a failure from the start of the investment, but nonetheless continued investing *billions* of dollars into the company and lied to investors about VillageMD's progress and performance. Not surprisingly, Plaintiffs identify no particularized factual allegations in support of this theory showing that any Defendant made a misstatement, let alone did so with fraudulent intent.

Just like the Complaint, Plaintiffs' Opposition speaks in sweeping generalities and assumptions rather than particularized facts.  Plaintiffs insist, for example, that Defendants decided in June 2022 to abandon the rollout of VillageMD clinics, but they identify no specific, *contemporaneous* facts demonstrating that any statement was false or misleading when made. Perhaps more concerningly, plaintiffs do not even attempt to square this allegation—which they repeat no less than 12 times in their Opposition—with the actual data in Walgreens' SEC filings showing that Walgreens opened nearly a hundred new clinics *after* it supposedly "abandoned" the rollout.  Plaintiffs contend that other true statements about clinic openings nonetheless were misleading, but they never point to specific facts showing *why* that is so.  And despite Plaintiffs' quibbling over how to categorize the dozens of statements they challenge, they raise no serious argument for why the forward-looking statements—the vast majority of statements challenged— fall outside the safe harbor, or why other sincere opinions and immaterial puffery are somehow actionable fraud.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in Defendants' Motion ("Mot.," ECF No. 57).  References to "Opposition" or "Opp." are to Plaintiffs' Opposition to Defendants' Motion (ECF No. 68).

Plaintiffs' scienter theory is also deficient. Plaintiffs contend Defendants "knew" or "were reckless in disregarding" the risk that the challenged statements were false or misleading, but they plead no facts—let alone particularized facts—explaining why. Plaintiffs instead resort to generalized conclusions that Defendants "were intimately familiar with VillageMD," that they "obviously knew the rollout was shut down," and that it would be "inconceivable" for Defendants not to have known their statements were false. But Plaintiffs point to no well-pled facts (because there are none) to support these allegations.

What is clear from the Complaint and the Opposition is that Plaintiffs disagree with Walgreens' business strategy to expand into healthcare through the VillageMD investment. But disagreement with a strategy—even one that proves unsuccessful—is a far cry from particularized facts meeting the heightened standard for pleading securities fraud. Plaintiffs have failed to meet their difficult pleading burden. The Complaint should be dismissed.

## ARGUMENT

I. **The Opposition Confirms That the Amended Complaint Fails to Plead a False or Misleading Statement With the Required Specificity[2]**

Plaintiffs' Section 10(b) claim fails because Plaintiffs have not alleged particularized facts establishing that any challenged statement was false when made or was rendered misleading by a material omission. *See* Mot. § I.A–E. Many of the statements Plaintiffs challenge are forward-looking statements, statements of opinion, or puffery that are insulated from liability under federal securities laws. *Id.* The Opposition does not meaningfully address these defects.

---

[2] Implicitly admitting that their Complaint is impermissible "puzzle pleading," Plaintiffs improperly seek to belatedly organize their unwieldy allegations in an appendix that identifies 43 challenged statements (most containing sub-statements) alongside the purported "facts" showing why each statement is false or misleading. *See* Plaintiffs' Appendix A, ECF No. 69-1 ("Appendix A"); *see also* Defendants' Motion to Strike Appendix A filed contemporaneously herewith (ECF No. 71). Far from remedying the confusing nature of the Complaint, Appendix A continues to require the parties to "speculate about the contours of the plaintiffs' fraud claims." *Lauria v. Biosante Pharm., Inc.*, 968 F. Supp. 2d 951, 958 (N.D. Ill. 2013).

A.    The PSLRA's Safe Harbor Protects Walgreens' Projections and Future Plans

The PSLRA safe harbor shields forward-looking statements from liability if (i) they were "identified as … forward-looking," and were "accompanied by meaningful cautionary statements," or (ii) the plaintiff fails to plead particularized facts showing that the speaker had "actual knowledge" that the statements were false. 15 U.S.C. § 78u-5(c)(1)(A)(i), (B)(i). None of Plaintiffs' arguments remove the challenged statements from the safe harbor.

1.    Statements Regarding Projections and Future Plans Are Forward Looking[3]

Plaintiffs' contention that Defendants' "milestone and guidance" statements "are not forward-looking," Opp. 21–22, misstates the law and their Complaint.[4] *First*, Plaintiffs do not dispute that Walgreens identified every challenged forward-looking statement as forward-looking in its public filings and on the relevant earnings calls or investor presentations. Opp. 22.

*Second*, Plaintiffs argue that "milestone and guidance" statements are "mixed" statements, with both forward-looking and "present aspects." Opp. 21–22. But Plaintiffs' sole example relies on plainly forward-looking language. *See* Opp. 22 ("with 94 co-located clinics, WBA was 'on the track,' including 200 by 2022 end"). In *Phoenix Insurance Company, Ltd. v. ATI Physical Therapy, Inc.*, this Court found statements about "being 'on track' to meet its … new-clinic goal[]" to be "purely forward-looking." 690 F. Supp. 3d 862, 880 (N.D. Ill. 2023). Plaintiffs attempt to distinguish *Phoenix* by arguing that the statements in *Phoenix* were made with "amorphous

---

[3] Plaintiffs are wrong that "Defendants do not argue that the clinic opening statements are forward-looking, puffery, or opinions[.]" Opp. at 14 n.12. Defendants' Motion specifically stated that "Walgreens' projections and **statements regarding its plans to open co-located clinics** are classic forward-looking statements protected from liability under the PSLRA." Mot. 11–12 n.5. Defendants also argue that several of the clinic opening statements are nonactionable puffery. Mot. 14 n.8.

[4] Plaintiffs do not identify which statements fall into this new "milestone and guidance" category. To the extent any statement that Defendants identify in the Motion as forward-looking is not explicitly noted as a "milestone and guidance" statement, Plaintiffs concede those statements are forward-looking.

3

confidence," indicating they communicated a message about the future and were therefore forward-looking, whereas the statements here were "concrete, verifiable present-state conditions of the status of the rollout." Opp. 22 n.23. Not so. The statements at issue here are nearly identical to those in *Phoenix*. Plaintiffs' cited cases are also inapposite. *See Pub. Emps.' Ret. Sys. of Mississippi v. TreeHouse Foods, Inc.,* 2018 WL 844420, at *3 (N.D. Ill. Feb. 12, 2018) (finding "on track" statement fell outside PSLRA safe harbor because it lacked meaningful cautionary language); *In re Golden Heaven Grp. Holdings Ltd. Sec. Litig.*, 2025 WL 714171, at *6 (C.D. Cal. Mar. 3, 2025) (finding statements of present fact such as "[w]e believe that innovative amusement facilities will enable us to *maintain* the existing guest patronage" actionable).

Plaintiffs also claim the forward-looking statements are "mixed with historical information." Opp. 22. But Plaintiffs mischaracterize these as statements of historical fact, *see, e.g.*, *id* at 22 n.24 (mischaracterizing "WBA is 'well on the way to' targets which 'will … accelerate WBA's EPS growth'" as a statement of historical fact), or selectively excerpt statements to appear more "mixed" than it actually is, *see* Opp 22 n.24 (representing statement in ¶ 242 as stating "'execution to date provides us visibility and confidence to' reconfirm guidance" but omitting "to increase the long-term outlook for our next growth engine"). Unlike the statements of historical or present fact at issue in *Hedick v. The Kraft Heinz Co.*—"we reached 5 agreements with our top clients" and "we are increasing our investment and supporting our big brands"—the challenged statements here do not only speak to the Company's "current status and actions." 2021 WL 3566602, at *15 (N.D. Ill. Aug. 11, 2021).

*Third*, Plaintiffs claim the safe harbor does not extend to purported omissions regarding projections. Opp. 22. This is not the law. The PSLRA safe harbor expressly applies to any claim "based on an untrue statement of material fact *or omission* of a material fact necessary to make the

4

statement not misleading." 15 U.S.C. § 78u-5(c)(1) (emphasis added). Every court of appeals that has considered this question has concluded that the PSLRA's safe harbor applies to purported omissions related to forward-looking statements.[5] To the extent the decades-old district court case Plaintiffs cite could be read otherwise, *see* Opp. 22, it incorrectly states the law.

2.   *Meaningful Cautionary Language Accompanied the Forward-Looking Statements*

The first prong of the safe harbor protects the forward-looking statements because they were accompanied by meaningful cautionary language. *See* Mot. 13. Plaintiffs claim Defendants' cautionary language is inadequate because the warnings omitted that "clinics were unopened, woefully understaffed, bereft of patients, and severely underperforming." Opp. 21. This argument mischaracterizes Defendants' cautionary language and misstates the law. Meaningful cautionary language "must be substantive and tailored to the specific predictions made in the allegedly misleading statement." *Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937, 952–53 (N.D. Ill. 2003). However, "failure to include the particular factor that ultimately causes the forward-looking statement not to come true will not mean that the statement is not protected by the safe harbor." *Vallabhaneni v. Endocyte, Inc.*, 2016 WL 51260, at *17 (S.D. Ind. Jan. 4, 2016).

The challenged forward-looking statements were accompanied by cautionary language that warned investors about risks that could affect Walgreens' projections, *including* VillageMD. *See* Mot. 13; Ex. 30 at 14 ("Businesses acquired as part of [Walgreens'] U.S. Healthcare segment could experience losses or liabilities that would result in a material adverse effect on our business

---

[5] *See, e.g.*, *Heinze v. Tesco Corp.*, 971 F.3d 475, 484 (5th Cir. 2020) ("[W]e disagree with [plaintiff's] assertion that the safe harbor is inapplicable [to omissions]."); *Golub v. Gigamon Inc.*, 847 F. App'x 368, 373 (9th Cir. 2021) ("[B]oth statements allegedly rendered misleading by this omission are entirely forward-looking …. The PSLRA thus bars any claim based on these omissions." (citation omitted)); *Baron v. Smith*, 380 F.3d 49, 53–54 (1st Cir. 2004) (rejecting omissions claim based on the PSLRA safe harbor); *Harris v. Ivax Corp.*, 182 F.3d 799, 806 (11th Cir. 1999) ("[T]here is no question under the statute that a material and misleading omission can fall within the forward-looking safe harbor.").

operations, results of operation and financial condition."). Walgreens also warned that a "failure to recruit or retain … key personnel could have an impact on [its] performance."[6] Ex. 30 at 20.[7] This cautionary language is "substantive" and "tailored" to the statements at issue.

Plaintiffs also argue the safe harbor is inapplicable because Walgreens purportedly concealed that the risks "had already materialized." Opp. 21. Plaintiffs are wrong. Walgreens warned of risks related to VillageMD as early as August 31, 2021—long before Walgreens allegedly "abandoned" the clinic rollout. *See* Exs. 6 at 3; 7 at 16–17. Walgreens was transparent with investors when many of those risks *later materialized* and warned that they were ongoing. *See* Mot. 13; Ex. 7 at 29 ("[W]e expect [the Company] to *continue* to be affected by a number of factors … including financial performance of our equity method investees[.]"). These warnings more than suffice for the safe harbor to apply.[8] *See Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 843 (N.D. Ill. 2003) (quoting *Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999) ("Language is meaningful and cautionary if it puts an investor 'on notice of the danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward.'")).

> 3. *Plaintiffs Do Not Plead That the Forward-Looking Statements Were Made With Actual Knowledge of Their Falsity*

The forward-looking statements also fall squarely within the second prong of the safe harbor because Plaintiffs point to no facts showing that any statement was made with actual

---

[6] Unlike in *Pierrelouis v. Gogo, Inc.*, which found defendants' warnings that there was a general risk of increased projected capital expenditures "due to the effects of … technology failures and equipment failures" was not meaningful, 2021 WL 1608342, at *11 (N.D. Ill. Apr. 26, 2021), Defendants' cautionary language is more specific than merely highlighting the "general risks" of the business, Opp. 21.

[7] All citations to Ex.__ refer to the exhibits attached to the Declaration of Jessica Valenzuela, dated February 18, 2025 (ECF No. 57-2).

[8] Plaintiffs' reliance on *Hedick* is misplaced. 2021 WL 3566602, at *16 (finding defendants "did not warn that any **present** facts about [the Company's] business model could cause problems"). To the extent any risk had already materialized, Defendants' cautionary language was tailored to "ongoing" risks.

knowledge of falsity. *See* Motion § II. Plaintiffs' bald conclusion that "[t]he decision to stop the [clinic] rollout … further evidences Defendants' actual knowledge," Opp. 20–21, has no supporting facts. The forward-looking statements should be dismissed for this reason alone.

### B. Optimistic Statements About VillageMD Are Inactionable Puffery

Plaintiffs do not meaningfully dispute that vague and optimistic statements about the Company's performance, including that Walgreens' business strategy "is working," ¶ 246, VillageMD's delivery model is "highly scalable," ¶ 227, and Walgreens Health is "tracking well against all of our key milestones," ¶ 231, are inactionable puffery. *See* Mot. 14–15; Opp. 12. Their arguments only underscore their pleading failure.

Plaintiffs first argue that these statements are "concrete and measurable" because allegations from confidential witnesses ("CWs") contradict them and because Defendants "touted" VillageMD's importance. Opp. 12. This is nonsensical. The indeterminate nature of corporate optimism means these statements cannot be contradicted by "facts." The caselaw, which Plaintiffs fail to distinguish, makes clear that similar statements are routinely dismissed because they are "not determinate enough to be material to a reasonable investor." *See, e.g.*, *City of Taylor Police and Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592, 595 (7th Cir. 2021) (statement that project was "progressing as planned" not actionable because it "expressed only vague optimism"); *West Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 652 (N.D. Ill. 2020) (finding "ongoing growth" and "fastest-growing companies" constituted immaterial corporate puffery because they were not specific enough to allow "objective verification").[9]

---

[9] Plaintiffs' cases concern statements more concrete than those at issue here. *See Seeks v. Boeing Co.*, 752 F. Supp. 3d 992, 1017 (N.D. Ill. 2024) ("the airplane is safe," "we know how to fly it safely," and "the 737 MAX is a safe airplane"); *Blatt v. Corn Prods. Int'l, Inc.*, 2006 WL 1697013, at *3–4 (N.D. Ill. June 14, 2006) ("improvement over the 2004 performance"). Plaintiffs' reliance on *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Allscripts-Misys Healthcare Solutions, Inc.*, is misplaced because the court found all optimistic statements "immaterial." 778 F. Supp. 2d 858, 872 (N.D. Ill. 2011).

7

Plaintiffs next argue these statements are actionable simply because Defendants repeated them. Opp. 13. But an immaterial statement does not become material by repetition. *See, e.g., Phoenix Ins. Co.*, 690 F. Supp. 3d at 877 (finding statements regarding "competitive advantage" repeated in several sources inactionable); *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995) (finding repeated statements that company was "recession-resistant" inactionable puffery). The case on which Plaintiffs rely found that statements were actionable because the complaint "presented enough support to show that [the challenged statements] were important to investors," *not* because they were repeated. *Pub. Employees' Ret. Sys. of Mississippi*, 2018 WL 844420, at *3.

Plaintiffs also argue that Defendants' optimistic statements are actionable because VillageMD was supposedly Walgreens' "most important strategy in Company history."[10] Opp. 13. Walgreens said no such thing. Many of these statements were about the larger healthcare segment or Company as a whole. *See, e.g.,* ¶¶ 212, 231, 236, 237, 245. Plaintiffs cannot manufacture context to make an inactionable statement actionable. And the sole case Plaintiffs cite in support of this argument has nothing to do with puffery. *See Fryman v. Atlas Fin. Holdings, Inc.*, 2022 WL 1136577, at *11 (N.D. Ill. Apr. 18, 2022) (noting "[w]hether a statement is misleading" requires the court to "consider the context in which the statement was made").[11]

C.      Defendants' Beliefs Are Inactionable Opinions

Many of the challenged statements are inactionable opinions. *See* Mot. § I.C. Plaintiffs

---

[10] Plaintiffs claim that Walgreens entered into a definitive agreement to go private due to losses from VillageMD. Not only is that referenced transaction irrelevant to Plaintiffs' claims (as it was executed well after the Complaint was filed), but the Court should decline Plaintiffs' improper invitation to baselessly speculate as to the reasons behind the transaction.

[11] Plaintiffs do not meaningfully dispute that Defendants' statement that "demand for healthcare services in our stores has never been higher" is inactionable. Opp. 11 n.9. Plaintiffs instead assert that Defendants' plain reading of the at-issue statement asks the Court to "resolve competing interpretations on a 'motion to dismiss.'" When read in context, this statement clearly relates to Walgreens' retail pharmacy segment, not VillageMD. *See* Mot. 18. Regardless, Plaintiffs do not identify a particularized fact that contradicts this statement.

8

fail to plead facts showing that Defendants did not sincerely hold these beliefs. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). Plaintiffs argue that Mr. Mahajan's statements that "we're moving in the right direction as it relates to where the fiscal year is," ¶ 269, and "we expect to continue to drive growth as they focus on the core markets," ¶ 272, omitted that VillageMD underperformed targets. Opp. 20. Plaintiffs do not argue that Mr. Mahajan did not genuinely hold these beliefs. Disclosures that occurred months *after* Mr. Mahajan's statements, *see* Opp. 20, are not evidence that Mr. Mahajan did not believe his statements when he made them. *Omnicare*, 575 U.S. at 186 (belief that "turned out to be wrong" not actionable).[12]

Similarly, Plaintiffs do not dispute that Defendants believed the number of co-located clinics was a key performance indicator ("KPI"). *See* Opp. 19. Instead, Plaintiffs assert, without authority, that because the number of co-located clinics was "highly material" and "the most important criteria for investors," statements regarding KPIs must have "omitted contradictory facts." *Id*. 19–20. Plaintiffs plead no such facts, and their disagreement with management's view about KPIs does not plead fraud. *See City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 497 (S.D.N.Y. 2021) (defendants "entitled to their opinion" that a particular metric was "the best metric for measuring the company's financial health").

D.     Plaintiffs Identify No False or Misleading Statement

Plaintiffs' Opposition does not identify with particularity a single false or misleading

---

[12] Plaintiffs' reliance on *Azar v. Grubhub, Inc.* to say that an opinion statement is actionable if it "could reasonably be interpreted as a factual claim" is misplaced. 2021 WL 4077327, at *5 (N.D. Ill. Sept. 7, 2021) (finding statements that "we've been able to acquire high-quality new diners" and "ever-improving restaurant network" could reasonably be interpreted as a factual claim). Mr. Mahajan's statements are nothing like those at issue in *Azar*. Plaintiffs' reliance on *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543 (D. Del. Feb. 7, 2020) is similarly unavailing because the plaintiffs "alleged particularized facts suggesting a lack of reasonable basis for the opinions." *Id.* at *4–5.

statement.[13]  Plaintiffs point to no facts demonstrating that the challenged statements were false or misleading when made.  Plaintiffs rely on a case not governed by the PSLRA to claim they need only allege statements that, if "taken together and in context … would have misled a reasonable investor." Opp. 10.  But the PSLRA requires far more than Plaintiffs' generalized claims of falsity. *See Tellabs Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007) (PSLRA requires plaintiffs to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading"); *see also* 15 U.S.C. § 78u-4(b)(1).

**(i) Clinic Opening Statements.**  Statements regarding the number and pace of clinic openings are not actionable.  Mot. 17 n.10–11.  Plaintiffs argue these statements were misleading because Walgreens purportedly conveyed to investors that "the clinic rollout and healthcare strategy were proceeding smoothly" while omitting that clinics were underperforming due to an inability to staff physicians or attract patients.  Opp. 15.  Again, Plaintiffs manufacture context that did not exist.  The statements said nothing about the progress of the healthcare strategy or clinic performance.  *See* Mot. 17–18 n.10–12.  Rather, they related only to the number of clinics opened—information Plaintiffs concede was correct.[14]  Mot. 16–17; Opp. 17.  Walgreens said nothing about the performance of any clinic, so it had no duty to disclose alleged performance problems.  *See Heavy & Gen. Laborers' Local 472 & 172 Pension & Annuity Funds v. Fifth Third*

---

[13] Plaintiffs have abandoned their claims as to two challenged statements: (i) "WBA and VillageMD have 52 co-located primary care practice locations currently open, and will have more than 80 open by the end of this calendar year," ¶ 202, and (ii) "We are continuing to strategically review our portfolio over the next three months in an effort to ensure it drives growth and delivers value," ¶ 271.

[14] Plaintiffs argue that it is "improper and irrelevant" for Defendants to rely on Walgreens' SEC filings (many of which are incorporated by reference into the Complaint) to demonstrate the accuracy of the clinic opening statements. Opp. 15.  Not so.  The Court may consider documents that "contain publicly available information," including SEC filings. *In re Baxter Int'l Inc. Sec. Litig.*, 2021 WL 100457, at *1 n.2 (N.D. Ill. Jan. 12, 2021).  Plaintiffs neither allege the SEC filings are false nor raise a "reasonable dispute as to what the [document] establishes," *see* Exs. 15, 23, 27, 38; *see also* ECF No. 57-1.  Plaintiffs' reliance on *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018), is thus misplaced, Opp. 15 n.14.

*Bancorp*, 2022 WL 1642221, at *15 (N.D. Ill. May 24, 2022).

Regardless, and making Plaintiffs' arguments all the more baffling, Walgreens *did* disclose most of the allegedly omitted information—including (i) challenges in building a patient panel at VillageMD; (ii) that Walgreens had stopped opening new clinics by October 2023; and (iii) that Walgreens eliminated over 500 corporate roles in spring of 2023.[15]  *See* Mot. 21; *see also* Opp. 16–17.  And nowhere do Plaintiffs identify any statement rendered false or misleading by any so-called omission.  Mot. 21; Opp. 18–19.

**(ii) Guidance and Milestone Statements.**  Plaintiffs ignore the "Performance Statements" altogether, and do not meaningfully address the Motion's arguments as to these 53 statements. Instead, Plaintiffs place unidentified statements into a new category: "Guidance and Milestone Statements."  The Complaint fails to plead that any of these statements is false or misleading.

Plaintiffs argue that statements "touting" VillageMD's "growth potential" and "high growth trajectory" were misleading because "the majority of clinics nationwide underperformed operational plans and missed profitability targets," and Walgreens "abandoned" the rollout of clinics.  Opp. 17.  But Plaintiffs do not dispute that VillageMD consistently grew sales for seven consecutive quarters, eventually reaching over $1.6 billion in Q2 2024, or that Defendants' SEC filings accurately reflected that the number of co-located clinics grew from 72 in Q1 2022 to 217 in Q3 2023.  *See* Mot. 6, 17–18.  Plaintiffs seek to minimize this concession by asserting that the "mere fact" that Walgreens opened the VillageMD clinics "was meaningless" because they underperformed.  Opp. 18.  But this ignores the myriad disclosures Walgreens made about the risk of its investment in VillageMD and the U.S. Healthcare segment.  *See supra* § I.A.

---

[15] Plaintiffs argue that the June and October 2023 disclosures about the pace of clinic openings were late, but fail to identify any specific fact that the clinic rollout was abandoned before then.  *See generally* Opp.

Nor do Plaintiffs point to specific facts from the Complaint that contradict any "Guidance and Milestone" statement.[16] For example, Plaintiffs assert that Mr. Driscoll's September 21, 2023 statement that Walgreens expected to open 600 co-located clinics by 2025 and 1,000 by 2027 was false because "Defendants lacked a basis for their projections and milestones *given the available data*." Opp. 18 (emphasis added). Plaintiffs, however, do not even hint at (much less identify with particularity) what that data was, or explain how it contradicted these statements when made.

Plaintiffs also argue that Ms. Brewer's October 13, 2022 statement that "there's really no impact" from labor trends and "we're really not seeing a labor issue on our Walgreens Health side" was false and misleading because even if Walgreens was opening additional clinics, "clinics are not the same as physicians." Opp. 11 n.9. Plaintiffs insist that their allegation that Walgreens had abandoned the clinic rollout by the time Ms. Brewer made these statements undermines the import of Walgreens' continued clinic growth. *Id.* Not so. Plaintiffs do not dispute the accuracy of Walgreens' public filings demonstrating increasing clinic openings. Opp. 17. Nor do Plaintiffs dispute that the CW allegations they rely on regarding physician staffing issues (i) are untethered in time and (ii) pertain to a particular store or individual market. Opp. 11 n.9. The Opposition fails to identify a single fact contradicting Ms. Brewer's statement.

**(iii) Medicaid Statements.** Plaintiffs argue that Walgreens misled investors by saying it "[accepted] all types of insurance" including "Medicaid" and that VillageMD "focused on all patient populations" despite its disclosure that VillageMD only accepted Medicaid "in participating markets." Opp. 19; *see also* ¶¶ 120–22, 208, 210–211. These statements are not

---

[16] Plaintiffs misleadingly assert that Defendants' October 13, 2022 statement regarding "visibility" and "'confidence' that U.S. Healthcare was Walgreens' 'next growth engine'" was false because Defendants had purportedly decided to abandon the rollout months earlier. Opp. 17. But the plain language makes clear that the challenged October 13, 2022 statement pertained to U.S. Healthcare as a whole, not VillageMD.

inconsistent. When the statements are read in context (as required), no reasonable investor would think that *every* VillageMD accepted Medicaid for *every* patient. And Plaintiffs do not dispute that allegations from two CWs who allege that "VillageMD did not accept Medicaid" are undated and pertain only to specific markets—*not* VillageMD as a whole. *See* Opp. 19.

## II. The Opposition Cites No Pled Facts Supporting a Strong Inference of Scienter

As Plaintiffs acknowledge, pleading scienter requires particularized facts showing that Defendants "knew the statement was false" or were otherwise reckless in "disregarding a substantial risk that it was false." Opp. 22 (quoting *Rensin, Tr. of Rensin Joint Tr. v. United States Cellular Corp.*, 755 F. Supp. 3d 1048, 1064 (N.D. Ill. 2024)). Plaintiffs effectively concede that no Defendant had a motive to deceive investors, Opp. 28 n.31, making scienter even more difficult for plaintiffs to plead. *City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 2020 WL 6118571, at *7 (N.D. Ill. Oct. 16, 2020) (in the absence of motive to deceive, "a 'strong inference' of the required state of mind is difficult to make") (citation omitted), *aff'd sub nom. City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592 (7th Cir. 2021).[17] Plaintiffs also gloss over their failure to plead scienter on a defendant-by-defendant basis, as the PSLRA requires, referring throughout the Opposition to "Defendants" collectively. *See Cornielsen v. Infinium Cap. Mgmt.*, LLC, 916 F.3d 589, 602 (7th Cir. 2019) (rejecting group pleading and holding that "[p]laintiffs must create a strong inference of scienter with respect to each individual defendant").

The central flaw in Plaintiffs' scienter theory is their failure to identify *any* adverse facts existing at the time of any challenged statement that were known by any Defendant or were so

---

[17] Plaintiffs suggest lack of motive is insignificant. Opp. 28 n.31. But the case they cite, *Ross v. Career Educ. Corp.*, does not support that proposition. 2012 WL 5363431, at *11 (N.D. Ill. Oct. 30, 2012). There, plaintiffs pled that some defendants had actual knowledge of specific information contradicting their challenged statements, while another defendant lacked such particularized allegations against him and therefore lacked scienter. *Id.* at *9, *11. Here, Plaintiffs have not pled specific information known by *any* Defendant that contradicts any challenged statement.

13

obvious that the maker of any challenged statement should have known the statement was untrue. At most, Plaintiffs point to grab-bag arguments that—whether considered individually or together—fall well short of supporting the "cogent" and "compelling" inference of scienter necessary to survive a motion to dismiss. *Tellabs*, 551 U.S. at 314.

A.    The Opposition Cites No Pled Facts That Defendants Were Aware of Contradictory Information

Plaintiffs argue that because Defendants "accessed contradictory data, received regular reports, and frequently discussed VillageMD's perennially poor performance," Defendants must have known their statements were false.[18] Opp. 24.  But Plaintiffs do not identify any contradictory data that *any* Individual Defendants accessed at any time.  *West Palm Beach*, 495 F. Supp. 3d at 659 (rejecting a "must have known" theory as "an end-run around the requirement that plaintiffs set forth particularized facts to suggest that defendants acted knowingly or recklessly").  Nor do Plaintiffs identify any reports that any Individual Defendant received reflecting contradictory information, explain *when* these reports were supposedly received, or specify what information the reports purportedly contained.[19]  *See Rensin*, 755 F. Supp. 3d 1048 at 1066 (Rowland, J.) (quoting *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *27 (S.D.N.Y. Apr. 2, 2020) (rejecting scienter where plaintiffs "fail to show what 'specific contradictory information' was available to any Defendant at the time they made any alleged false or misleading statement.")).  Indeed, it is impossible to tell from the CW allegations whether the alleged "facts" existed before or after a

---

[18] Plaintiffs ask this Court to infer from the fact that Ms. Brewer and Mr. Driscoll were allegedly hired to oversee Walgreens' healthcare expansion that every Individual Defendant had the requisite scienter.  But Plaintiffs' cited case supports no such leap.  *See Ross*, 2012 WL 5363431, at *10 (inferring scienter where defendant hired to fix compliance reporting problems that were the subject of the challenged statements).

[19] Plaintiffs' cases are readily distinguishable.  *See Azar*, 2021 WL 4077327, at *4 (indicating specific types of contradictory reports); *Rensin*, 755 F. Supp. 3d at 1059, 1062 (defendant admitted he possessed information contradicting challenged statement).

14

challenged statement was made. Mot. 26; *see, e.g.*, ¶¶ 152–54. Likewise, Plaintiffs do not identify with any particularity any meeting that any Individual Defendant attended during which he or she was apprised of information that should have made him or her aware that a challenged statement was false when made. Mere access to information about the business is not enough. Mot. 26, 28.[20]

Plaintiffs also do not dispute that the vast majority of the CWs had no direct contact with any Individual Defendant. Opp. 28. Nevertheless, Plaintiffs claim that "[c]ourts routinely find scienter where CWs lacked direct contact with executive defendants," but cite no in-circuit case in support.[21] Opp. 28 n.32. Even if direct contact between a CW and Defendant were not required, Plaintiffs still must plead particularized facts revealing a defendant's knowledge or state of mind. Mot. 24–25; *see also Chew v. Moneygram Int'l, Inc.*, 2024 WL 4346522 *19 (N.D. Ill. Sept. 30, 2024) (no scienter where "[t]here is not a single specific allegation in the Complaint regarding the purported knowledge of [any defendant] regarding the alleged compliance shortcomings"). As Plaintiffs' own caselaw makes clear, "the Seventh Circuit directs district courts to discount allegations from anonymous informants, often steeply." *Hedick*, 2021 WL 3566602, at *4.

---

[20] Plaintiffs misleadingly suggest that the Complaint alleges that "Brewer and Kehoe tracked VillageMD metrics through Athena." Opp. 24 n.26. It does not. All the Complaint alleges is that "VillageMD utilized the Athena Health platform … and that those metrics were made available to executive management, including Defendants Brewer and Kehoe." ¶ 160. Plaintiffs also misleadingly assert that CW13 alleged that "executives knew they were not meeting targets." Opp. 24 n.26. Again, the Complaint says no such thing. *See* ¶ 159 ("CW 13 confirmed that Walgreens' executives received these metrics.").

[21] Plaintiffs' out-of-circuit cases are inapposite. *See Roberts v. Zuora*, 2020 WL 2042244, at *11 (N.D. Cal. Apr. 28, 2020) (inferring scienter from specific communications to defendants containing information contradicting challenged statements); *In re Avon Sec. Litig.*, 2019 WL 6115349, at *19 (S.D.N.Y. Nov. 18, 2019) (inferring scienter from CW allegations specifying updates and internal reports containing specific information defendants received); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent.*, 477 F. Supp. 3d 123, 132 (S.D.N.Y. Aug. 6, 2020) (crediting CW who worked on analysis related to contemplated agreement and talked to others about developments during his time at the company).

Plaintiffs' argument that CWs who worked at VillageMD rather than Walgreens are credible also is unpersuasive.[22]  Opp. 29.  Plaintiffs assert that Walgreens and VillageMD "interfaced at every level" and that many of the VillageMD CWs "were physically located at Walgreens stores," but Plaintiffs provide no support for these assertions or explain how physical presence at any one of Walgreens' thousands of stores provided VillageMD CWs any insight into Defendants' state of mind.  Opp. 29.  Plaintiffs do not dispute that none of the VillageMD CWs interacted with any Individual Defendant in any way or had personal knowledge of any Individual Defendant's state of mind at the time of any challenged statement.  Mot. 25–26; Opp. 29.

B.  Investor Updates and Interactions With Analysts Do Not Support Scienter

Plaintiffs suggest the Court should infer scienter simply because some of the Individual Defendants spoke about VillageMD.  Opp. 23.  This theory is nonsensical, unsupported by facts or law, and would—if it were the law—render meaningless the requirement of pleading particularized facts supporting a strong inference of scienter.  *See, e.g.*, *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1282 (S.D. Fl. 2017) (rejecting argument that because defendants "spoke intelligently" about subject of alleged omissions they must have known of "undisclosed problems"); *Joyce v. Amazon.com, Inc.*, 2025 WL 835054, at *14 (W.D. Wa. Mar. 17, 2025) (rejecting argument that "it would be absurd—or deliberately reckless—for [Defendants] to know enough about … issues to speak about them publicly but know nothing about those issues for purposes of scienter").

Plaintiffs also argue that because some of the Individual Defendants responded to questions from analysts, they must have been "intimately familiar" with VillageMD.  Opp. 23.  But Plaintiffs

---

[22] Plaintiffs' only cited case is out-of-circuit and is inapposite, as it does not address the credibility of CWs. *See In re Golden Heaven Grp.*, 2025 WL 714171, at *1 (contrasting investigative reports with IPO statements that grossly inflated the value and attendance of several amusement parks).

do not explain what these analyst questions were, when they occurred, or how Defendants' answers reflected knowledge of falsity. *In re Campbell Soup Co. Sec. Litig.*, 2020 WL 7022655, at *7 n.4 (D. N. J. Nov. 30, 2020) (declining to find scienter where plaintiffs "fail[ed] to show that Defendants knew facts contradicting their statements in response to analyst questions"); *Swartzendruber v. Colony Cap., Inc.*, 2020 WL 7754008, at *7 (C.D. Cal. Dec. 10, 2020) ("[V]ague allegations concerning analyst questions do not support a strong inference of scienter."). Plaintiffs' circular logic does not supplant the requirement of pleading particularized facts supporting a strong inference of scienter—none of which are pled here.

C. The Opposition Cites No Pled Facts That Defendants Ordered the 2022 Clinic Abandonment or 2023 Layoffs

Though much of Plaintiffs' Opposition rests on CW allegations that Walgreens supposedly "abandoned" its plan to rollout clinics in June 2022, the Complaint does not actually plead with particularity that this decision ever occurred—much less that any Defendant knew it had occurred. Plaintiffs baselessly assert that Defendants "knew the rollout was shut down in June 2022 because they ***ordered*** it" and that they "express[ly] authoriz[ed]" the firing of "100+ employees" by June 2023. Opp. 24 (emphasis in original). These facts are not sufficiently pled.

The Complaint is devoid of any factual allegation, and the Opposition identifies none, that Defendants *ordered* any purported shutdown of the clinic rollout. Opp. 24. Not surprisingly, Plaintiffs never say which Defendant(s) purportedly issued this order or when. *Id.*; *Cornielsen*, 916 F.3d at 602 (rejecting group pleading and holding that "[p]laintiffs must create a strong inference of scienter with respect to each individual defendant"). Plaintiffs assert that the CW allegations regarding the alleged clinic shutdown are "consistent and cross-corroborating" and "uniformly describe conditions diametrically opposed to Defendants' statements." Opp. 29. But even if the CW allegations are credible (and they are not), they differ on the timing and geographic

17

extent of the purported shutdown making it nearly impossible to "cross-corroborate" one another. *See* ¶¶ 124, 129, 131, 133. And Plaintiffs ignore that this purported "shutdown" occurred *while* Walgreens continued to open new clinics—the very activity it had supposedly secretly abandoned—as demonstrated by its undisputed SEC filings. Mot. 6.

Similarly, Plaintiffs do not identify which Defendant authorized the firing of "100+ employees" allegedly responsible for Walgreens' clinic buildout or when this authorization occurred. Opp. 24. In any event, this information was not withheld from investors because Walgreens disclosed in June 2023 that it had eliminated over 500 corporate roles in spring 2023. Mot. 21.[23] Plaintiffs do not identify what concealed information any Individual Defendant knew or should have known that made a challenged statement false when made. Opp. 24.

D. Plaintiffs' Reliance on the Core Operations Doctrine Is Misplaced

Lacking any particularized factual allegations showing that any Defendant knew any contradictory information at any point, Plaintiffs ask the Court to assume scienter using a "core operations" inference. Opp. 27–28. The core operations doctrine "typically applies only where the operation in question constitute[s] nearly all of a company's business." *In re Baxter Int'l Sec. Litig.*, 2021 WL 100457, at *13 (citation omitted). Plaintiffs acknowledge that Walgreens' core operation is pharmacy and that its retail pharmacy segment (which did not include VillageMD—a business that Walgreens never even fully owned) made up more than 75% of Walgreens' annual revenue during the relevant period. ¶¶ 35, 178 (quoting article describing Walgreens' "core pharmacy industry"); Mot. 27. The case Plaintiffs cite for the proposition that the core operations

---

[23] Plaintiffs' authority is distinguishable because those complaints identified specific facts likely known by defendants contradicting reported information. *See Gogo, Inc.*, 2021 WL 1608342, at *7 (CWs alleged that defendants knew specific information at defined points in the class period); *In re Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*, 604 F. Supp. 2d 1188, 1196 (N.D. Ill. 2009) (finding "ample factual allegations that defendants knew that the third quarter results were off trend … and that the warehouse management software program had significant problems").

18

doctrine can apply when a smaller percentage of the business is at issue says no such thing. *See Allison v. Oak St. Health, Inc.*, 2023 WL 1928119 at *10 (N.D. Ill. Feb. 19, 2023) (allowing core operations inference where plaintiff specifically showed how kickback scheme contributing 10% of new patients was "nevertheless a significant aspect of [defendant's] business").

Even if VillageMD were a core operation of Walgreens (it was not), the core operations theory only allows officers to "be assumed to know of facts critical to a business's core operations[.]" *In re Baxter Int'l Sec. Litig.*, 2021 WL 100457, at *13. Plaintiffs still must identify those "critical" facts, and neither the Opposition nor the Complaint do this. Instead, Plaintiffs attempt to skip directly to the inference of scienter, contending that the "extraordinary facts" that "Walgreens invested nearly $10 billion … [i]n the strategy, reorganized the Company around it, hired new management … [and] repeatedly touted that it was the 'next growth engine,'" somehow "support scienter." Opp. 28. Neither the size of the investment or losses[24] nor VillageMD's role in Walgreens' long-term growth plans support an inference of scienter.[25] Opp. 25–28. Plaintiffs cannot meet their burden of pleading scienter simply by claiming that VillageMD was important. If scienter could be inferred any time a key business or product confronted challenges, the PLSRA's pleading requirements would be meaningless.

---

[24] Plaintiffs cite to *Makor Issues & Rts., Ltd. v. Tellabs Inc.* for the proposition that "knowledge is inferable from gravity," but the *Tellabs* court did not suggest that financial losses support an inference of scienter. 513 F.3d 702, 704 (7th Cir. 2008). Plaintiffs' remaining cases are readily distinguishable. *See Ross*, 2012 WL 5363431, at *9 (finding "magnitude" of "widespread and pervasive" alleged fraud, not the size of financial loss, sufficient to infer scienter); *Hedick*, 2021 WL 3566602, at *13 (involving write-down on goodwill and intangible assets of defendant company, not partially-owned subsidiary); *Azar*, 2021 WL 4077327, at *5 (listing "losses" as sixth in a list of seven inferences "together" supporting scienter); *Desai v. General Growth Properties, Inc.*, 654 F. Supp. 2d 836, 841 (N.D. Ill. 2009) (corporate "survival" at issue was an inability to refinance debt due months after the challenged statements were made).

[25] Plaintiffs' cited authority does not support the idea that Defendants' statements about "long-term growth" justify the core operations inference. *See Chow v. Archer-Daniels-Midland, Co.*, 2025 WL 790854, at *2, *4 (N.D. Ill. Mar. 12, 2025) (challenging accounting statements concerning defendant's Nutrition segment and arguing that same segment was "at the 'core' of [Defendant's] growth plan").

19

E. <u>The Departure and Transitions of Ms. Brewer and Messrs. Kehoe and Driscoll Are Not Indicative of Scienter</u>

Plaintiffs effectively concede that Ms. Brewer's and Mr. Kehoe's resignations and Mr. Driscoll's transition alone cannot raise an inference of scienter, but insist that it can "add to the scienter inference." Opp. 27. Executive departures only are relevant to scienter if "accompanied by additional evidence of a defendant's 'wrongdoing.'" *Ross*, 2012 WL 5363431, at *10. Plaintiffs do not dispute that the Complaint lacks facts to show these departures or transitions were unusual, arguing only that analysts "connected" them to "Walgreens' healthcare shift." Opp. 26.

At most, Plaintiffs point to the unremarkable fact that Ms. Brewer and Messrs. Kehoe and Driscoll resigned or transitioned before the "truth" fully emerged. Opp. 27 n.29. This says nothing about scienter, as even Plaintiffs' cases demonstrate. *See Ross*, 2012 WL 5363431, at *10 (noting "the Ninth Circuit … ha[s] ruled that an inference of scienter only arises when a resignation … is accompanied by additional evidence of the defendant's 'wrongdoing'"); *Chow*, 2025 WL 790854, at *4 ("[T]hese facts cement the strong inference that can be drawn from the allegations reviewed above that the Individual Defendants were aware [of wrongdoing].").

F. <u>Plaintiffs' Section 20(a) Claims Must Be Dismissed</u>

Plaintiffs concede that their Section 20(a) claim first requires a primary violation of Section 10(b). Opp. 30 n.36. Because the Complaint fails to state a claim under Section 10(b) for the reasons stated above or to allege control by any of the Individual Defendants, the Court should also dismiss the Section 20(a) claim.

**CONCLUSION**

The Court should dismiss the Complaint in its entirety with prejudice.

Dated: May 5, 2025       By: */s/ Brian M. Lutz*
                    Brian M. Lutz
                    One Embarcadero Center

20

Suite 2600
San Francisco, CA 94111
Tel: (415) 393-8200
blutz@gibsondunn.com
(*admitted pro hac vice*)

Jessica Valenzuela
310 University Avenue
Palo Alto, CA 94301
Tel: (650) 849-5282
jvalenzuela@gibsondunn.com
(*admitted pro hac vice*)

Colin B. Davis
3161 Michelson Drive
Suite 1200
Irvine, CA 92612
Tel: (949) 451-3993
cdavis@gibsondunn.com
(*admitted pro hac vice*)

GIBSON, DUNN & CRUTCHER LLP

Paula E. Litt
Molly McGinley
321 N. Clark
Suite 500
Chicago, IL 60654-4769
Tel: (312) 701-9300
plitt@honigman.com
mmcginley@honigman.com

HONIGMAN LLP

*Counsel for Defendants*

21

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2025, I served this motion on counsel for Plaintiffs via the court's electronic filing system.

/s/ Brian M. Lutz
Brian M. Lutz

22