**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re Walgreens Boots Alliance Securities Litigation | Case No.: 1:24-cv-05907-MMR<br><br>Hon. Mary M. Rowland<br><br><u>CLASS ACTION</u> |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION (ECF 92)</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND AND PROCEDURAL HISTORY ............................................ 3

I.     STANDARD OF LAW FOR A MOTION FOR RECONSIDERATION ......................... 6

II.    ARGUMENT ......................................................................................................... 6

      A.    The Audio Recording is Not "New Evidence" Warranting Reconsideration ................................................................................... 6

      B.    Even if the Court Were to Consider the Motion, Defendants' Arguments are Unsupported and Do Not Change This Court's Finding that Driscoll's Statement Was Materially False and Misleading ..................................... 9

      C.    At Best, Defendants' Motion Presents a Disputed Fact Issue Inappropriate for Resolution at the Motion to Dismiss Stage ....................................... 13

      D.    Defendants' Rule 11 Threats are Improper, Unmerited, and Unprofessional ................................................................................... 14

III.   CONCLUSION .................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Cases**

*Aparicio-Brito v. Lynch*,
824 F.3d 674 (7th Cir. 2016) ............................................................................... 8

*Beezley v. Fenix Parts, Inc.*,
2019 WL 666754 (N.D. Ill. Feb. 13, 2019) ................................................................ 8

*Bey v. Wall*,
2018 WL 2860115 (E.D. Wis. June 8, 2018) ............................................................. 6

*Busic v. Orphazyme A/S*,
2022 WL 3299843 (N.D. Ill. Aug. 11, 2022) ........................................................... 13

*Campbell v. Marshall Int'l, LLC*,
2023 WL 12160330 (N.D. Ill. Jan. 9, 2023) .............................................................. 7

*Coll. Ret. Equities Fund v. Boeing Co.*,
2023 WL 6065260 (N.D. Ill. Sept. 18, 2023) ........................................................... 13

*Egonmwan v. Cook County Sheriff's Dep't*,
602 F.3d 845 (7th Cir. 2010) ............................................................................... 6

*Flynn v. Exelon Corp.*,
2021 WL 1561712 (N.D. Ill. Apr. 21, 2021) ............................................................ 14

*Fryman v. Atlas Fin. Holdings, Inc.*,
2022 WL 1136577 (N.D. Ill. Apr. 18, 2022) ........................................................... 10

*Gibbs v. ABT Eles., Inc.*,
2023 WL 6809610 (N.D. Ill. Oct. 16, 2023) ........................................................... 15

*Goplin v. WeConnect, Inc.*,
893 F.3d 488 (7th Cir. 2018) ............................................................................... 7

*Green v. Whiteco Indus., Inc.*,
17 F.3d 199 (7th Cir. 1994) ................................................................................. 9

*In re Allstate Corp. Sec. Litig.*,
2022 WL 2952816 (N.D. Ill. July 26, 2022) ............................................................ 11

*Ind. ex rel. Naylor v. Ind. State Teachers' Ass'n*,
950 F. Supp. 2d 993 (S.D. Ind. 2013) ..................................................................... 8

*Kelsey v. Allin*,
2016 WL 825236 (N.D. Ill. Mar. 2, 2016) .............................................................. 10

*Lowry v. RTI Surg. Hldgs., Inc.*,
532 F. Supp. 3d 652 (N.D. Ill. 2021) .................................................................... 13

*Marquez v. Hernandez*,
2020 WL 4015319 (N.D. Ill. July 16, 2020) ...................................................... 1, 6, 8

*Matter of Prince*,
85 F.3d 314 (7th Cir. 1996) ............................................................................. 8, 9

*Morningware, lnc. v. Hearthware Home Prod., Inc.*,
  2011 WL 1376920 (N.D. Ill. Apr. 12, 2011) ................................................................ 6

*N. Ill. Telecom, Inc. v. PNC Bank, N.A.*,
  850 F.3d 880 (7th Cir. 2017) ..................................................................... 15

*Perkins v. Town of St. John*,
  2026 WL 237443 (N.D. Ind. Jan. 29, 2026) ................................................. 14

*Plumbers & Pipefitters' Local Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Misys
  Healthcare Sols., Inc.*,
  778 F.Supp.2d 858 (N.D. Ill. 2011) .......................................................... 12

*Pryszcz v. Willowbrook Ford, Inc.*,
  2022 WL 900197 (N.D. Ill. Mar. 28, 2022)................................................. 15

*Rensin v. U.S. Cellular Corp.*,
  2024 WL 4651837 (N.D. Ill. Nov. 1, 2024) ............................................... 14

*Schmaltz v. Vill. of N. Riverside*,
  2018 WL 1138552 (N.D. Ill. Mar. 2, 2018)................................................ 10

*SEC v. Kameli*,
  2020 WL 2542154 (N.D. Ill. May 19, 2020)............................................... 10

*Uccardi v. Lazer Spot, Inc.*,
  390 F. Supp. 3d 911 (N.D. Ill. 2019) ........................................................ 14

*Walgreen Co. v. Peters*,
  2025 WL 1167832 (N.D. Ill. Mar. 10, 2025)........................................... 1, 7

**Other Authorities**

Seventh Circuit's Standards for Professional Conduct, "Lawyers' Duties to Other Counsel" .... 15

**Rules**

Fed. R. Civ. P. 11(c)(2), Notes of Advisory Committee on Rules—1993 Amendment.............. 15

## I.    INTRODUCTION

This Court held Plaintiffs plausibly alleged falsity for Defendant Driscoll's September 21, 2023 statement affirming Walgreens' milestone targets of opening 600 VillageMD clinics by 2025 and 1,000 by 2027 given that, over a year earlier, Defendants "decided internally to abandon the roll-out" and issued a "nationwide hold" on clinic openings.[1]  *See* ECF 78 at PageIDs 1637, 1646 (the "Order").  Defendants submitted a transcript and an appendix with their motion to dismiss (and another transcript with this Motion) matching ***verbatim*** the misstatement alleged in Paragraph 260 of the Complaint.  Defendants now seek reconsideration claiming that an audio recording is new evidence and that "Driscoll *did not* make the statement attributed to him . . . and *did not* reaffirm co-located clinic milestones."  Defendants' Motion is meritless and should be denied.

Reconsideration is an extraordinary remedy appropriate only to correct manifest errors or address newly discovered evidence.  *Marquez v. Hernandez*, 2020 WL 4015319, at *2 (N.D. Ill. July 16, 2020) (Rowland, J.).  Defendants do not come close to meeting this standard.  Defendants cannot dispute the audio has been publicly available for years, and their feigned surprise that the content of Driscoll's misstatement would "become so important" to a Rule 12(b)(6) motion specifically attacking the falsity of statements touting the execution of the VillageMD strategy defies credulity.  Defendants' failure to explain their lack of diligence is fatal to their Motion. *Walgreen Co. v. Peters*, 2025 WL 1167832, at *1 (N.D. Ill. Mar. 10, 2025) (denying reconsideration where Walgreens failed to show it could have raised evidence "during the pendency of the motion

---

[1] Unless otherwise noted: (i) capitalized terms have the same meanings as in the Consolidated Class Action Complaint (the "Complaint," ECF 50); (ii) all emphasis is added; and (iii) internal citations, brackets, ellipses, footnotes, and quotations are omitted. "Motion" refers to Defendants' motion for reconsideration (ECF 92) and "DB" refers to their brief supporting the Motion (ECF 93). "MTD Ex." refers to Defendants' exhibits filed with their motion to dismiss the Complaint (ECF 57-3 through 57-61) and "Ex." refers to Defendants' exhibits filed with the Motion (ECF 93-2 and 93-3). "Potrepka Decl." refers to the Declaration of Gregory M. Potrepka in Support of Plaintiffs' Opposition to Defendants' Motion filed herewith. "Paragraph 260" refers to Defendant Driscoll's false statement at issue alleged in ¶260 of the Complaint.

1

to dismiss" using reasonable diligence).

Even if the Court were to entertain the Motion, it lacks any merit. Defendants argue that "the actual words spoken by Mr. Driscoll are different than the statement Plaintiffs alleged in the Complaint and that the Court adopted in its Order." However, the only difference articulated in the Motion is the substitution of "Yeah" for "Yes"—words with identical meanings. Context reinforces Driscoll's affirmative response. Just four sentences after responding "Yes" to the analyst's direct question of whether the 600 and 1,000 clinic targets remained appropriate for investors to rely upon, Driscoll emphasized Walgreens was focused on "expanding and allocating capital" and "accelerating profitable growth." Moreover, analysts clearly believed that Driscoll had responded in the affirmative, as the analyst's next question asked what Walgreens' business model would look like "several years out" after it was "more fully integrated" with a "bigger base of co-located stores." Tellingly, Driscoll *again* reaffirmed the targets, noting that despite already opening over 300 clinics, Walgreens was still in "the investment phase" and that the VillageMD strategy "works" and would be "scale[d.]" Critically, at no time during that questioning did Driscoll ever deny the milestone targets, or even stop the analyst and either seek to clarify his answer or disclose the rollout had been halted a year earlier.

Defendants insist the "cadence and conversational context" of the audio show the written transcript "got the actual language wrong." However, Defendants fail to explain what language was purportedly wrong, or how any word's meaning was changed by the tempo and flow of the discussion. Thus, assuming *arguendo*, the audio "*did not* reaffirm co-located clinic milestones," Defendants' Motion *still* fails because Driscoll's positive statement is *still* materially misleading given he failed to disclose that Walgreens had long ago decided to "abandon the roll-out" and placed a "nationwide hold" on clinic openings. Order at PageID 1637, 1646.

2

At best, the Motion raises a factual dispute appropriate for discovery rather than resolution on the pleadings. Plaintiffs already propounded discovery regarding the basis for Driscoll's statement, including his preparation for the conference, the production of notes or talking points he relied upon, any documents or correspondence within Walgreens debriefing on the conference, and the production of correspondence with analysts or investors following the conference. This discovery bears directly on Defendants' argument about what a "reasonable listener" would "think" about Driscoll's statement—an inquiry Defendants' Motion totally fails to explain.

The Motion should be denied in its entirety.

## II. BACKGROUND AND PROCEDURAL HISTORY

On December 20, 2024, Plaintiffs filed the Complaint alleging Defendants misled investors about the success of Walgreens' strategic shift to becoming a full-fledged provider of primary healthcare, and specifically, the purported execution of the Company's multi-year rollout of doctor-staffed, primary healthcare clinics "co-located" at Walgreens stores. ECF 50. The gravamen of Plaintiffs' securities fraud claims is that Defendants made materially false and misleading statements concerning the success of Walgreens' new healthcare strategy, including by routinely touting the opening of new clinics, and issuing and reaffirming specific milestone targets for future clinic openings. *Id.* at ¶¶1-15. Meanwhile, Defendants deliberately concealed that the Company's healthcare strategy was so unprofitable, and so unpopular among both patients and doctors, that Defendants internally determined to abandon the rollout by no later than mid-2022. ¶¶82-143. Defendants placed a nationwide hold on the opening of any new clinics, laid off the entire teams responsible for building out new clinics, shuttered existing clinics, and exited entire markets. *Id.*

Of relevance to the Motion, the Complaint alleges that on September 21, 2023, Defendant Driscoll—Walgreens' EVP, President of U.S. Healthcare, and a VillageMD Board member—attended TD Cowen's 8th Annual Future Health Investor Conference (the "Conference"). During

the Conference, Driscoll was asked by a TD Cowen analyst: "I think in the past, <u>you guys gave</u> <u>some targets in terms of co-located VillageMD, Walgreens kind of locations,</u> if I recall, something like <u>600 by 2025 and 1,000 by 2027.  Are those kind of still sort of the milestones we should be</u> <u>thinking about[]</u>?"  ¶260.  The Complaint alleges "Driscoll answered affirmatively, reassuring investors that ***'[y]es, I think we should be -- I'm obsessively focused on delivering better results*** ***<u>faster.</u>'***" *Id.* (underline in original).  The Complaint also alleges that Driscoll's response was false and misleading because it omitted that Walgreens had long ago "shut down the rollout of any new co-located clinics" and laid off everyone responsible for opening new clinics.  ¶¶261-63.

Defendants filed their motion to dismiss on February 18, 2025, along with supporting papers, including a chart of "Alleged Misstatements." *See* ECF 57-1.  Defendants did not dispute Paragraph 260's accuracy.  Rather, Defendants twice repeated Driscoll's statement ***verbatim***: (1) as entry 68 in their false statement chart; and (2) in a transcript of the Conference filed as an exhibit to their supporting declaration, declared to be true and correct under penalty of perjury, and which Defendants requested be judicially noticed.  *See id.* at PageID 598, ECF 57-2 at PageID 609-10; ECF 57 at PageID 537, n. 1, MTD Ex. 45.  Defendants' motion to dismiss and reply briefs did not specifically address the falsity of Driscoll's statement at the Conference.  Instead, Defendants' opening brief grouped the statement with other purported "Performance Statements." ECF 57 at PageIDs 552-54.  Defendants' sole citation to Paragraph 260 in their motion to dismiss briefing was embedded in a footnoted string of paragraph references.  *See* ECF 57 at PageID 552 n. 13.

On January 5, 2026, the Court partially denied the motion to dismiss.  The Court sustained Driscoll's misstatement at the Conference affirming Walgreens' milestone targets of opening 600 VillageMD clinics by 2025 and 1,000 by 2027.  Order at PageIDs 1637, 1646-47.  Relying on the same language that was included in Paragraph 260 of the Complaint, Defendants' false statement

chart, and the written transcript that Defendants submitted to the Court and swore under penalty of perjury was "true and correct," , this Court held that Driscoll's statement was plausibly false and misleading given that, "[b]y mid-2022, Plaintiffs allege that Walgreens placed a nationwide hold on opening future co-located clinics" and that "Defendants had already allegedly decided internally to abandon the roll-out" but concealed those material facts from investors when "boasting about the numbers of clinic openings in the future." Order at PageIDs 1625, 1637, 1644.

On February 2, 2026, Defendants filed the Motion, requesting reconsideration of whether Paragraph 260 was false or misleading given the "cadence and conversational context" purportedly conveyed by the Conference's audio recording—audio that was allegedly unavailable to Defendants prior to the Order and only obtained thereafter, but inexplicably also was at all relevant times "publicly available." DB at PageID 1679, 1680 n.1, 1682. The Motion once again seeks judicial notice of a transcript containing text that is identical to Paragraph 260. *Id.* at PageID 1680 n.1; ECF 93-3. Defendants now contend, based on the audio recording, that at the Conference Defendant Driscoll responded as follows to the analyst's question of "whether '600 by 2025 and 1,000 by 2027' were 'kind of still sort of the milestones we should be thinking about,'": "A. I think we should be looking… Q. Is that part of the right framework? A. ***Yeah, I think we should be*** …" DB at PageID 1683. Notably, Defendants have never filed a pleading, appendix, transcript, or recording suggesting Driscoll denied the analyst's milestone question or disclosed that the Company determined internally to abandon the rollout in mid-2022.

The parties met and conferred prior to the filing of the Motion. Just as in their Motion, Defendants asserted without explanation that, "as the audio clip demonstrates, Mr. Driscoll did not say what he is alleged to have said" and then asked Plaintiffs to voluntarily dismiss their claims against Defendant Driscoll which the Court had sustained. Px.A. Plaintiffs asked Defendants to

5

clarify what statements attributed to Driscoll in the Complaint the audio recording purportedly demonstrated he did not say. Potrepka Decl., ¶4. However, Defendants could not specifically state what, in their view, Driscoll actually said in the audio recording that differed from the written transcript, how their interpretation of his statement substantively differed from Paragraph 260 and the transcript, or why the audio recording changed the Court's conclusion that Driscoll's statement was materially false and misleading for concealing the rollout's abandonment. *Id*.

## I. STANDARD OF LAW FOR A MOTION FOR RECONSIDERATION

This Court has instructed that "[a] motion for reconsideration serves a limited function: 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Marquez*, 2020 WL 4015319, at *2. Under binding Seventh Circuit law, a party may not use a motion for reconsideration to "introduce new evidence that could have been presented earlier." *Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 852 (7th Cir. 2010). Further, motions for reconsideration cannot assert "arguments that were not made by a party to which the arguments were available." *Marquez*, 2020 WL 4015319, at *2. Accordingly, "reconsideration is an extraordinary remedy" reserved for "rare cases."[2] *Bey v. Wall*, 2018 WL 2860115, at *1 (E.D. Wis. June 8, 2018). As explained below, none of the requisites for reconsideration exist here.

## II. ARGUMENT

### A. The Audio Recording is Not "New Evidence" Warranting Reconsideration

Defendants contend the audio is "newly discovered evidence" warranting reconsideration that was "effectively unavailable earlier despite reasonable diligence." DB at PageID 1681. However, "new evidence cannot be introduced in a motion for reconsideration unless the moving party shows not only that the evidence was newly discovered or unknown to it until after the

---

[2] The standard for reconsideration "is generally the same under both Rule 59(e) and Rule 54(b)." *Morningware, lnc. v. Hearthware Home Prod., Inc.*, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011).

6

hearing, but also that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion." *Goplin v. WeConnect, Inc.*, 893 F.3d 488, 490 (7th Cir. 2018). The Motion fails to argue, let alone sufficiently show, this rigorous standard is met.

*First*, Defendants fail to show that the audio recording was "unknown" or "could not with reasonable diligence" have been discovered. *Goplin*, 893 F.3d at 490; *see Campbell v. Marshall Int'l, LLC*, 2023 WL 12160330, at *1 (N.D. Ill. Jan. 9, 2023) (reconsideration denied where movants failed to show diligence to obtain "new[]" evidence). Defendants admit the audio recording has been publicly available. DB at PageID 1680, n.1. While Defendants claim they obtained the audio recording "only after the Court handed down its Order" (DB at PageID 1682), they tellingly do not state whether they knew or could have discovered with reasonable diligence that: (i) audio of the Conference was publicly available; (ii) the audio recording existed in the Company's own files and could have been provided to their counsel ahead of the Order; or (iii) anything prevented them from obtaining the audio during the pendency of their motion to dismiss. In fact, at all relevant times, the audio recording has been publicly available on at least **four** mainstream investor websites. Potrepka Decl., ¶5.

Walgreens knows the prior availability of the audio recording dooms the Motion. Less than a year ago, Judge Daniel denied a motion for reconsideration by Walgreens for failing to show it "could not, with reasonable diligence, have discovered and produced such evidence during the pendency of the motion to dismiss." *Walgreen*, 2025 WL 1167832, at *1. There, as here, the court noted that "at no point" did Walgreens deny having access to the purportedly "new" evidence or claim that it "unsuccessfully searched its files." *Id.*

*Second*, Defendants chose to rely on a written transcript of Driscoll's statement—one that they swore to the Court was a true and accurate reflection of the statement—in their motion to

dismiss rather than the audio. Having been unsuccessful in seeking dismissal of Driscoll's statement and recognizing that they failed to specifically address it in their motion to dismiss briefing, Defendants want a do-over.[3] However, arguments available "in the first round of briefing" cannot serve as "a second bite at the proverbial apple," on reconsideration. *Marquez*, 2020 WL 4015319, at *2-3. As particularly apt here, parties "may not use a motion for reconsideration as a life raft—especially not when [their] own strategic choices engendered [the] dilemma." *Ind. ex rel. Naylor v. Ind. State Teachers' Ass'n*, 950 F. Supp. 2d 993, 1013 (S.D. Ind. 2013). As the Seventh Circuit cogently put it, motions for reconsideration "are not replays of the main event." *Aparicio-Brito v. Lynch*, 824 F.3d 674, 687 (7th Cir. 2016); *see Beezley v. Fenix Parts, Inc.*, 2019 WL 666754, at *1 (N.D. Ill. Feb. 13, 2019) ("[The Court's] opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.").

*Third*, Defendants' reliance on *Prince* is unavailing. DB at 1682 (citing *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996)). In *Prince*, the bankruptcy court was instructed by the district court on remand to opine on one specific metric. However, during oral argument, the bankruptcy court and the parties agreed a second metric was more suitable. *Id.* at 324-25. The bankruptcy court rendered its order after oral argument, without adjournment for further evidence. *Id.* Here, unlike the unexpected change of the relevant metric in *Prince*, the content of Driscoll's statement at the Conference is not an issue that has only suddenly sprung up. The statement forms the ***basis*** of Plaintiffs' securities claims,[4] concerns a metric that Defendants repeatedly told investors to use in evaluating the performance of Walgreens' healthcare strategy and routinely reaffirmed,

---

[3] Defendants' claim that nothing in the "briefing suggested that a core ruling in the Order would turn on precise language" is false. DB at PageID 1683. Defendants ***did*** argue Plaintiffs' claims turned on whether the Complaint specified "each statement alleged to have been misleading." ECF 57 at PageID 544.

[4] The milestones Driscoll reaffirmed (600 clinics by 2025 and 1,000 by 2027) are mentioned in no less than eighteen Complaint paragraphs. ¶¶1, 2, 47, 52, 56, 59-60, 63, 76, 86, 179, 202, 211-12, 219, 260, 263, 286.

including at the Conference, and Defendants specifically moved for dismissal on the falsity element of Plaintiffs' claims. "Where a party is made aware that a particular issue will be relevant to its case but fails to produce readily available evidence pertaining to that issue, the party may not introduce the evidence to support" reconsideration. *Prince*, 85 F.3d at 324; *see also Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 202 n.5 (7th Cir. 1994) (reconsideration should be denied where purportedly newly discovered evidence was available earlier and concerns a "central issue"). Thus, Defendants' claim that it did not occur to them that the content of Driscoll's statement would "become so important" until after the Order (DB at 1682) is specious.

**B.      Even if the Court Were to Consider the Motion, Defendants' Arguments are Unsupported and Do Not Change This Court's Finding That Driscoll's Statement Was Materially False and Misleading**

The Motion should also be denied because it is substantively meritless.

*First*, Defendants concede the written transcription was accurately quoted in the Complaint, the motion to dismiss briefing, and the Order. *See, e.g.,* DB at PageID 1681 ("[T]he language of the transcript generally matches the language alleged in the Complaint"). Moreover, and significantly, Defendants' written recitation of Driscoll's statement from the audio recording is essentially the same. While Defendants argue that "the actual words spoken by Mr. Driscoll are different than the statement Plaintiffs alleged in the Complaint and that the Court adopted in its Order," the *only* difference Defendants can point to is the substitution in the audio recording of the word "Yeah" for "Yes." *Id.* at PageIDs 1678, 1683. But the words have identical meanings. Any difference in semantics does not change the meaning of Driscoll's statement; there is no definition of "yes" or "yeah" that means "no."[5]   Under either iteration, Driscoll's statement remains materially false and misleading for the exact same reason alleged in the Complaint and accepted

---

[5] Driscoll never *denied* the clinic milestones targets at the Conference. Nor does the Motion argue he did.

in the Order: Driscoll's affirmation misled the market into believing that the rollout of co-located clinics remained ongoing over a year after the rollout of new VillageMD co-locations was secretly abandoned, and nearly four months after Walgreens quietly terminated all personnel responsible for the rollout's implementation. ¶¶261-63; Order at PageIDs 1617, 1619, 1637.

Thus, Defendants' bald assertion that the "audio recording conclusively refutes Plaintiffs' allegation that Mr. Driscoll reaffirmed clinic expansion targets" (DB at PageID 1683), without explaining how, fails.[6] As this Court instructs, "[t]o be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind." *Schmaltz v. Vill. of N. Riverside*, 2018 WL 1138552, at *1 (N.D. Ill. Mar. 2, 2018) (Rowland, J.).

Tellingly, even though the transcript (and the audio recording) has been publicly available for over two years, Driscoll is a named defendant, and the Complaint specifically alleged that this statement was materially false and misleading, Driscoll apparently never informed his counsel at any point—including during the entire pendency of Defendants' motion to dismiss—that the transcript supposedly did not accurately reflect what he actually said.

*Second*, the context of Driscoll's statement confirms a reasonable investor would have understood the statement to be affirming the clinic milestone targets. *See Fryman v. Atlas Fin. Holdings, Inc.*, 2022 WL 1136577, at *11 (N.D. Ill. Apr. 18, 2022) (an alleged misstatement must be evaluated within the "context in which the statement was made"); *Kelsey v. Allin*, 2016 WL 825236, at *4 (N.D. Ill. Mar. 2, 2016) (statements mislead where they give an "impression of a state of affairs that differ[ed] in a material way from the one that actually exists.").

In responding to the analyst's question seeking reaffirmation of the rollout targets, Driscoll

---

[6] Even if Defendants proffered an innocent explanation of what Driscoll meant by "Yeah, I think we should be," that is not a basis for dismissal, let alone reconsideration. *See SEC v. Kameli*, 2020 WL 2542154, at *25 (N.D. Ill. May 19, 2020) (denying motion to dismiss where "reasonable minds may differ as to how investors would have understood defendants' statements").

followed his "Yes, I think we should be" response by confirming Walgreens' focus "right now and going forward" was on "expanding and allocating capital"—*i.e.*, continuing capital investments into clinics. ECF 93-3 at PageID 1697. The analyst's very next question demonstrates that he understood Driscoll's statement during the Conference as reaffirming the milestones. *See In re Allstate Corp. Sec. Litig.*, 2022 WL 2952816, at *7 (N.D. Ill. July 26, 2022) (analysts' perceptions showed market understanding). The analyst followed up Driscoll's misstatement by asking what Walgreens' "heavy investment phase"—*i.e.*, the execution of the clinic rollout—meant for its "business model" "several years out" when there would be "a bigger base of co-located stores":

> <u>That's helpful</u>. And that kind of leads into – there's a question here from the audience. And I guess it gets to that, right, <u>I think investors are concerned about sort of the economics of the health care services model. Obviously, you're in a heavy investment phase.</u> So it's a little hard to see it, I'm sure. Anything you can share about sort of the returns on capital, maybe on some of the mature sites? Anything that you kind of share that kind of gives you confidence? And <u>what do you think the business model looks like several years out, once we're kind of more fully integrated, more -- a bigger base of co-located stores</u>, et cetera, that's matured.

ECF 93-3 at PageID 1697-98. Clearly, the analyst believed that Driscoll had answered his question in the affirmative, as evidenced by the above follow-up questions confirming the positive state of the rollout. Indeed, had the analyst believed Driscoll expressed any doubt regarding the clinic milestones targets (or the healthcare strategy generally), he would not have referred to a "***bigger base of co-located stores***," "several years out," after the "heavy investment phase."

Notably, in responding to this follow-up question, at no time did Driscoll ever stop the analyst and either seek to clarify his answer or disclose that the rollout had been halted. Instead, Driscoll again reinforced the false impression that the clinic rollout remained ongoing and that the milestone targets remained a reliable framework for investors. Despite the clinic rollout's abandonment over a year prior, Driscoll reiterated that Walgreens was ***still*** investing capital into its VillageMD strategy, noting that the number of clinics had now surpassed 300 locations, and

11

had undergone rapid expansion with two-thirds of the clinics "opened **in the last 18 months** and I think, 43% just **in the last 12**." *Id.* at PageID 1698. Driscoll again assured that Walgreens was still "in the investment phase" with respect to the clinic rollout, and that the healthcare strategy was paying off, proclaiming "we're seeing the results. The -- we have a model that works at Village that I think **we can scale**, and it's our responsibility to show that, put more points on the board, and that's what we're focused on." *Id.* Driscoll's comments thus demonstrate that Driscoll himself knew that he had answered the analyst's question in the affirmative. The Motion ignores this essential context in which Driscoll repeatedly reinforced his affirmance of the milestone targets in direct response to the analyst's question. *See Plumbers & Pipefitters' Local Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Misys Healthcare Sols., Inc.*, 778 F.Supp.2d 858, 878-79 (N.D. Ill. 2011) (statement made "in direct response to an analyst's question", and which "did not mention" known risks, plausibly misrepresented "an overly rosy picture").

*Third*, despite Defendants' rhetoric that the audio recording is such a game changer that it warrants reconsideration, strikingly absent from the Motion is any explanation of: (1) what Defendants contend Driscoll meant by his statement; (2) what a reasonable investor would "think" Driscoll meant; and (3) how Driscoll's response represents a denial of the clinic milestones. Defendants' pound the table that the "cadence and conversational context" provided by the audio show that the written transcript "got the actual language wrong," but their argument is a non-sequitur. Defendants never explain how or why the "cadence and conversational context" changed the meaning of Driscoll's actual words. Defendants simply fail to connect the dots. Defendants' assertion that Driscoll and the analyst spoke over each other (DB at PageID 1683) is irrelevant, as Defendants again do not bother explain why this makes any difference. For example, Defendants do not contend that Driscoll misunderstood the analyst's question, or that he thought he was

12

responding to a different question. Notably, Driscoll did not ask the analyst to clarify his question or express any doubt about what the analyst was asking him to confirm.

In short, while Defendants stridently assert the audio recording "makes clear" that Driscoll "*did not* affirm Walgreens' prior targets," (DB at PageID 1678, 1682) the salient fact is that when directly asked about the viability of these targets, Driscoll answered in the affirmative, did not deny the targets, and did not even so much as suggest that the targets should be modified, reduced, or withdrawn in any way. Consequently, Plaintiffs and the Court are left to guess why Defendants contend the audio recording "shows beyond a doubt that Plaintiffs' allegation regarding the content and characterization" of Driscoll's statement is "plainly wrong." DB at PageID 1678.

*Finally*, under any explanation, reconsideration is improper because, as this Court correctly held, nowhere did Driscoll disclose the critical fact that over a year prior, "Walgreens placed a nationwide hold on opening future co-located clinics" and "decided internally to abandon the roll-out." Order at PageID 1637. This highly material omission alone renders Driscoll's response actionably misleading. *See Busic v. Orphazyme A/S*, 2022 WL 3299843, at *20 (N.D. Ill. Aug. 11, 2022) (response to analyst's question misleading where defendant "implied" a fact despite knowing otherwise months earlier); *Coll. Ret. Equities Fund v. Boeing Co.*, 2023 WL 6065260, *19 (N.D. Ill. Sept. 18, 2023) (response to analyst's question misleadingly "omit[ed] material information" that "would have altered the total mix of information available to investors").

### C. At Best, Defendants' Motion Presents a Disputed Fact Issue Inappropriate for Resolution at the Motion to Dismiss Stage

Because Defendants seek reconsideration of an order denying their Rule 12(b)(6) motion to dismiss, "the Court must accept as true all well-pleaded factual allegations in the complaint and must draw all reasonable inferences in the plaintiff's favor." *Lowry v. RTI Surg. Hldgs., Inc.*, 532 F. Supp. 3d 652, 659 (N.D. Ill. 2021). Yet, Defendants "urge the Court to listen to the audio

13

recording" of Driscoll's statement, make a finding as to the "precise cadence and conversational context" that a "reasonable listener" would draw, and draw inferences in their favor. DB at PageID 1682, 1684. That is not how a motion to dismiss is analyzed. What impression a reasonable investor might take from the delivery of a statement is a quintessential fact question. *See Rensin v. U.S. Cellular Corp.*, 2024 WL 4651837, at \*7, n.5 (N.D. Ill. Nov. 1, 2024) (Rowland, J.) (rejecting defendants' contrary interpretation of alleged misstatement on their motion to dismiss); *Flynn v. Exelon Corp.*, 2021 WL 1561712, at \*7 (N.D. Ill. Apr. 21, 2021) ("[I]t is inappropriate at the motion to dismiss stage to resolve questions of fact."); *Perkins v. Town of St. John*, 2026 WL 237443, at \*3 (N.D. Ind. Jan. 29, 2026) ("The parties each spent a great deal of time arguing the meaning of their version of the facts and what interpretation the Court should put on the available [audio and video] footage, demonstrating that there are factual issues to be resolved.").

Indeed, discovery will be instrumental in contextualizing Driscoll's statement at the Conference, including the market's understanding of the statement and Driscoll's intent in responding as he did. Plaintiffs have already propounded document discovery targeting the fact questions raised in the Motion, including Driscoll's preparation for the Conference, the production of notes or talking points Driscoll relied upon in connection with the Conference, and correspondence with analysts, investors, or the media after the Conference. This discovery bears directly on the Motion's argument about what a "reasonable listener" would "think" about Driscoll's statement—a inquiry Defendants' Motion never answers or even bothers to explain.[7]

**D.    Defendants' Rule 11 Threats are Improper, Unmerited, and Unprofessional**

Unable to muster law or fact in support of reconsideration, Defendants cavalierly lob threats.

---

[7] Defendants' surmise that granting the Motion might "streamline" discovery (DB at PageID 1684) does not support reconsideration. *See Uccardi v. Lazer Spot, Inc.*, 390 F. Supp. 3d 911, 916 (N.D. Ill. 2019) (denying reconsideration because "[p]arties always are burdened by discovery and the other requirements for the preparation of a case. That is a consequence of our judicial system and the rules of civil procedure.").

DB at PageID 1680 & n.2 (charging Plaintiffs' counsel with "a serious Rule 11 issue" and threatening sanctions). Rule 11 should not be used to "emphasize the merits of a party's position" or "to intimidate an adversary into withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11(c)(2), Notes of Advisory Committee on Rules—1993 Amendment. Rule 11's important procedural requirements are meant to curb the use of sanctions as a "weapon" that could be "brandished to threaten." *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 885 (7th Cir. 2017). Defendants have not followed the letter or spirit of those requirements.

At bottom, Defendants' empty Rule 11 threats concern a jury question of what a reasonable investor would take from the tempo and flow of an interview. Litigating that fact question does not violate Rule 11, it is Plaintiffs' counsel's basic duty as a fiduciary. *See Pryszcz v. Willowbrook Ford, Inc.*, 2022 WL 900197, at *4 (N.D. Ill. Mar. 28, 2022) (declining to impose Rule 11 sanctions, noting plaintiff's counsel "was not obligated to accept a version of events proffered by [defendants'] counsel"). Plaintiffs' counsel's ability to consider those arguments on a developed record, rather than hastily dismissing their clients' and the Class's claims demonstrates prudence. Defendants have not even articulated why Driscoll's statement was not misleading—so how could they determine Plaintiffs' counsel have a "Rule 11" issue? These claims are egregious.

It is required of all counsel that they "not, absent good cause, … bring the profession into disrepute by unfounded accusations of impropriety." *Gibbs v. ABT Eles., Inc.*, 2023 WL 6809610, at *13 (N.D. Ill. Oct. 16, 2023); *see* Seventh Circuit's Standards for Professional Conduct, "Lawyers' Duties to Other Counsel," Std. Nos. 4 & 5. Plaintiffs trust Defendants and their counsel will take caution to refrain from impugning Plaintiffs or their counsel in the future.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

15

Dated: February 24, 2026

By: *Peter S. Lubin*
**DITOMMASO LUBIN, P.C.**
Peter S. Lubin (Bar No. 6185789)
17W220 22nd Street, Suite 410
Oakbrook Terrace, IL 60181
Tel.: (630) 333-0333
Email: peter@d-l.law

**LAW OFFICE OF TERRENCE BUEHLER**
Terrence Buehler (Bar No. 6181738)
417 North Marion Street
Oak Park, IL 60302
Tel.: (312) 371-4385
Email: tbuehler@tbuehlerlaw.com

*Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
Morgan M. Embleton (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com
Email: membleton@zlk.com

-and-

Elizabeth K. Tripodi (admitted *pro hac vice*)
1101 Vermont Avenue, NW Suite 800
Washington, D.C. 20005
Tel.: (202) 524-4290
Fax: (212) 363-7171
Email: etripodi@zlk.com

*Counsel for Lead Plaintiff Christopher G. Collins and Lead Counsel for the Class*

**SAXENA WHITE P.A.**
Maya Saxena (admitted *pro hac vice*)
Scott Guarcello (admitted *pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434

16

Tel.: (561) 394-3399
Fax: (561) 394-3382
Email: msaxena@saxenawhite.com
Email: sguarcello@saxenawhite.com

-and-

David R. Kaplan (admitted *pro hac vice*)
Emily R. Bishop (admitted *pro hac vice*)
505 Lomas Santa Fe Dr., Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096
Email: dkaplan@saxenawhite.com
Email: ebishop@saxenawhite.com

-and-

Sara DiLeo (admitted *pro hac vice*)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Email: sdileo@saxenawhite.com

*Counsel for Plaintiff the Fire & Police Employees'*
*Retirement System of the City of Baltimore and*
*Additional Counsel for the Class*


**COHEN MILSTEIN SELLERS & TOLL PLLC**
Carol V. Gilden (Bar No. 6185530)
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Tel.: (312) 629-3737
Fax: (312) 357-0369
Email: cgilden@cohenmilstein.com

*Liaison Counsel for Plaintiff the Fire & Police*
*Employees' Retirement System of the City of*
*Baltimore*

17