**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *In re Walgreens Boots Alliance, Inc. Securities Litigation* | Master File No.: 1:24-cv-05907 |
| | Hon. Mary M. Rowland |
| | <u>CLASS ACTION</u> |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**<u>DEFENDANTS' MOTION FOR RECONSIDERATION</u>**

**Table of Contents**

INTRODUCTION ..........................................................................................................................1

ARGUMENT...............................................................................................................................2

      I.      The Audio Recording Is Newly Discovered Evidence Under Rule 54(b)...............2

      II.     The Audio Recording Undermines the Court's Falsity Ruling as to
           Statement 68..............................................................................................................4

      III.    Plaintiffs' Argument that Reasonable Minds Could Differ Fails ...........................7

CONCLUSION.............................................................................................................................7

i

**Table of Authorities**

**Cases**

*Busic v. Orphazyme A/S,*
  2022 WL 3299843 (N.D. Ill. Aug. 11, 2022) .............................................................6

*Goplin v. WeConnect*
  893 F.3d 488 (7th Cir. 2018) .............................................................3

*Goucher v. Iterum Therapeutics*
  648 F. Supp. 3d 962 (N.D. Ill. 2022) .............................................................6

*Hall v. Int'l Ass. of Bridge, Structural, Ornamental and Reinforcing Iron Workers,*
  2024 WL 6985784 (N.D. Ill. Sept. 26, 2024) .............................................................2, 3

*Lightspeed Media Corp. v. Smith,*
  830 F.3d 500 (7th Cir. 2016) .............................................................2

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.,*
  601 U.S. 257 (2024).............................................................6

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Misys Healthcare Sols., Inc.,*
  778 F. Supp. 2d 858 (N.D. Ill. 2011) .............................................................6

*Matter of Prince,*
  85 F.3d 314 (7th Cir. 1996) .............................................................2, 3

*Stringel v. Methodist Hosp. of Ind., Inc.,*
  89 F.3d 415 (7th Cir. 1996) .............................................................7

*Walgreen Co. v. Peters,*
  2025 WL 1167832 (N.D. Ill. Mar. 10, 2025).............................................................2

**Rules**

Rule 10b-5(b).............................................................6

Rule 54(b) .............................................................2

**INTRODUCTION**

The Court denied dismissal as to statement 68 based on Plaintiffs' allegation that John Driscoll stated that Walgreens remained on track to open 600 clinics by 2025 and 1,000 by 2027. The audio recording of the September 21, 2023 TD Cowen Investor Conference demonstrates that he did not.

Plaintiffs disingenuously attempt to reduce the issue to a semantic debate over whether Mr. Driscoll said "yes" or "yeah." That mischaracterizes both Defendants' motion for reconsideration (the "Motion," ECF Nos. 92, 93) and—more importantly—the audio recording itself. The recording is not ambiguous: Mr. Driscoll **_never_** affirmed the target number of clinics raised in the analyst's question. Instead, Mr. Driscoll began his answer not by confirming the old targets, but by saying "I think we should be looking… ." The analyst then briefly interrupted Mr. Driscoll mid-sentence, and Mr. Driscoll attempted to resume his answer, using the word "yeah" as conversation filler before continuing his answer about being open to "revisiting capital and capital-light options" and operational performance. At no point did Mr. Driscoll affirm or say *anything* about clinic targets. The stray "yeah" did not affirm anything, as anyone listening to the audio recording would conclude. The Complaint—and the Court's January 5, 2026 order, ECF No. 78 (the "Order")—thus rest on a materially different exchange than the one that actually occurred.

Plaintiffs do not dispute the authenticity of the recording or the words Mr. Driscoll spoke. They argue only—and incredibly—that the difference between the audio recording and the transcript "has no effect" on the meaning of the statement. But the Court's ruling as to statement 68 turned precisely on Plaintiffs' contention that Mr. Driscoll reaffirmed Walgreens' clinic target. Because the audio recording demonstrates he did not, reconsideration is warranted.

Defendants do not seek a "do-over." They seek only to hold Plaintiffs to Mr. Driscoll's

1

actual words, not the words Plaintiffs incorrectly allege he said based on an inaccurate transcript. The actual statement does not support Plaintiffs' falsity theory and, once reconsidered, the statement and Mr. Driscoll, who is not alleged to have made any other statement remaining in the case, should be dismissed from this action.

## ARGUMENT

### I.     The Audio Recording Is Newly Discovered Evidence Under Rule 54(b)

Reconsideration is appropriate where newly discovered evidence demonstrates that a ruling rests on a materially incorrect factual premise. *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505–06 (7th Cir. 2016). That is precisely the case here.

Plaintiffs contend that the audio recording cannot be "new evidence" because it was publicly available. Opp. 1–2, 6–9. That is not the standard. As precedential authority makes clear, pre-existing evidence may qualify as newly discovered when its significance becomes apparent only after a court's ruling.[1] *See Matter of Prince*, 85 F.3d 314, 324–25 (7th Cir. 1996). Plaintiffs' efforts to distinguish *Prince* on the basis that the issue turned on "one specific metric" fails. Opp. 8–9. The court and parties in *Prince* did not realize until final argument that one specific issue—whether a debtor received certain income—"was a crucial question." *Prince*, 85 F.3d at 325. And, like here, the parties in *Prince* could not have foreseen the relevance of that

---

[1] Plaintiffs misleadingly assert that "Walgreens knows the prior availability of the audio recording dooms the Motion" because of a holding in an unrelated matter. Opp. 7 (citing *Walgreen Co. v. Peters*, 2025 WL 1167832 (N.D. Ill. Mar. 10, 2025)). But *Walgreen Co. v. Peters* has no relevance here. In that case, Plaintiff Walgreens moved for reconsideration based on newly acquired evidence showing the court had personal jurisdiction over a dismissed defendant. *Id.* at *1. The defendant, however, submitted copies of Walgreens' own business records showing the purported newly acquired evidence previously existed in Plaintiff's documents. *Id.* And the relevance of the business records to personal jurisdiction was apparent before the motion to dismiss. *See id.* Here, unlike the *Peters* case, a spotlight did not shine on the key issue—whether a written transcript accurately transcribed the actual words spoken and challenged by Plaintiffs—until after the motion to dismiss decision. And unlike *Peters*, Defendants here did not have an audio transcript of this statement until after the Court handed down its decision and the relevance of the specific words spoken became clear. *See* Lutz Decl. at ¶ 5.

information "and therefore neglect[ed] to produce [it]." *Id.* at 325; *see also Hall v. Int'l Ass. of Bridge, Structural, Ornamental and Reinforcing Iron Workers*, 2024 WL 6985784, at *2 (N.D. Ill. Sept. 26, 2024). Here, as in *Prince*, Defendants had no reason to analyze at the motion to dismiss stage whether the statement at issue had been erroneously transcribed and alleged in the Complaint—particularly when this was just one of *80 statements* Plaintiffs challenged in their Complaint without explanation as to why any of them supposedly was misleading.[2] *See* Order at 18–19 (noting Plaintiffs' failure to plead for every challenged statement "each reason or reasons why that statement [was] misleading.").[3]

Nothing in the Complaint suggested that the precise wording of a single interrupted exchange would be outcome determinative. Only after the Court relied on Plaintiffs' characterization of that exchange, with a descriptive bracket that read language into the alleged misstatement, did the significance of the recording emerge. Defendants acted promptly once the significance of those alleged words became clear. *See* Lutz Decl. at ¶¶ 4–5.

*Goplin v. WeConnect* does not help Plaintiffs. Opp. 7. In *Goplin*, the defendant sought to introduce on a motion for reconsideration "more substantial evidence" to demonstrate that it was a party to an arbitration agreement. 893 F.3d 488, 490 (7th Cir. 2018). The court found the evidence was not newly discovered or unknown to the defendant at the time it moved to compel arbitration, and that "it could easily have produced" the evidence "the first time around." *Id.* Here,

---

[2] Neither did *Plaintiffs* compare the publicly available audio recordings of the alleged misstatements to the transcripts on which they based their Complaint—otherwise, they would not have relied on the inaccurate transcript in their pleading. *See Hall*, 2024 WL 6985784, at *2 (granting reconsideration where, because both parties had access to the newly submitted evidence before entry of the underlying order, "both parties bear some responsibility for failing to bring it to the court's attention earlier").

[3] An attorney declaration attaching a "true and correct cop[y]" of the transcript, ECF 57-2 at 1, obviously is *not* a sworn statement that the transcript itself contained "a true and accurate reflection" of statement 68, as Plaintiffs falsely contend. Opp. 4–5, 7.

3

the distinction between the written transcript and the audio recording of the September 2023 investor conference was unknown to Defendants at the time the motion to dismiss was briefed, Lutz Decl. at ¶ 3, and Defendants acted with reasonable diligence during the motion to dismiss briefing by reading the written transcript for every challenged statement in the 145-page Complaint that the Court found failed to meet the PSLRA's "exacting standard."[4]  Order at 18–19, Lutz Decl. at 3.

**II.     The Audio Recording Undermines the Court's Falsity Ruling as to Statement 68**

Even with the benefit of the audio recording, Plaintiffs continue to misrepresent what Mr. Driscoll said.  When the analyst asked whether "600 by 2025 and 1,000 by 2027" were "kind of still sort of the milestones we should be thinking about," the audio recording shows that Mr. Driscoll did not simply state "yeah," instead of "yes," as Plaintiffs misleadingly suggest. Opp. 2, 9.  Mr. Driscoll responded by saying, "I think we should be looking… ." *See* ECF No. 93-2 at 20:35-20:55.  The analyst then interrupted, "[i]s that part of the right framework?" *Id.* Mr. Driscoll resumed his answer by uttering "yeah" as conversation filler—not as an "answer[] in the affirmative" as Plaintiffs contend—before continuing his prior answer in which he said nothing that affirmed the prior target.  *See id.*; Opp. 13.  The audio recording cannot reasonably be interpreted otherwise.

Contrary to Plaintiffs' argument, Opp. 2, 11, Mr. Driscoll's full answer and the analyst's follow-up questions *reinforce*—as opposed to undermine—that Mr. Driscoll did not reaffirm the clinic milestone targets.  The analyst's follow-up question focused on "mature" clinics that had

---

[4] Plaintiffs assert throughout their opposition that Defendants did not dispute the accuracy of statement 68 in the motion to dismiss.  *See, e.g.*, Opp 4, 7, 9.  That's true—Defendants had no reason at that time to believe that the transcript and Plaintiffs' allegation regarding the content of statement 68 were inaccurate— but it's irrelevant.  What matters is the words spoken in statement 68, which the audio recording shows were not the words alleged in the Complaint.

been opened for extended periods of time, not on a target number of clinics that would be opened in the future. *See* ECF No. 93-3 at 8 (analyst asking about "the returns on capital … on some of the mature [co-located clinic] sites" and what "the business model looks like several years out" once there is a "bigger base of co-located stores, et cetera, that's matured"). Those questions track precisely the subjects Mr. Driscoll addressed in his prior answer—capital discipline, integration, and performance at *existing* co-located clinics—*not* target clinic openings. And Mr. Driscoll's ensuing response continued in that vein, emphasizing investment phase dynamics, operational execution, and scaling a model that "works," without reaffirming the clinic milestone. *See id.*

Moreover, Walgreens' focus on extracting value from existing co-located clinics, rather than opening new ones, was no surprise to the market at the time of this exchange. In the January and July 2023 earnings calls that occurred months earlier, Walgreens disclosed that it had "slowed the pace of clinic openings in new markets," ECF No. 57-42 at 8 (June 27, 2023 Q3 Earnings Call), that it was "rightsizing" its cost structure through "optimizing overhead and revenue synergies to better match market demand," *id.* at 7, and that VillageMD had decided to "get bigger in fewer markets," ECF No. 57-36 at 11 (Jan. 5, 2023 Q1 2023 Earnings Call). So both the actual words spoken and the context of the challenged exchange undercut Plaintiffs' false allegation that Mr. Driscoll affirmed clinic targets at the September 2023 investor conference.[5]

Plaintiffs surely know Mr. Driscoll's statement did not affirm the target, so they pivot, arguing that Mr. Driscoll's statement was misleading not because the actual words he spoke were false, but because "it omitted that Walgreens had long ago 'shut down the rollout of any new co-

---

[5] Plaintiffs also point to statements identical to those the Court *already dismissed* to contort Mr. Driscoll's statement into an affirmation about future clinic openings. *See* Opp. 2, 12; Order 28 n.9 (dismissing allegations that Mr. Driscoll's statement that "the [VillageMD] model works" was false or misleading). But again, the plain language and context of Mr. Driscoll's statement show that he was addressing Walgreens' efforts to improve the profitability of clinics in mature markets where co-located clinics already had been opened. He was not addressing the target for future clinic openings.

located clinics' and laid off everyone responsible for opening new clinics." Opp. 4 (quoting Compl. ¶¶ 261–63). Putting aside that Plaintiffs' new argument assumes the truth of the "secret shutdown" allegations, it also fails as a matter of law. An omission is actionable only if it renders an affirmative statement misleading. *See, e.g.*, *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Misys Healthcare Sols., Inc.*, 778 F. Supp. 2d 858, 878–79 (N.D. Ill. 2011) (statement adequately alleged to be misleading where defendant's response to analyst's question created an "overly rosy picture" by omitting known contradictory facts); *Busic v. Orphazyme A/S*, 2022 WL 3299843, at *20 (N.D. Ill. Aug. 11, 2022) (liability where response to analyst question "implied" a fact the speaker knew to be untrue). The securities laws do not impose a freestanding duty to disclose material facts; they require disclosure only when necessary to make what the speaker said not misleading. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 266 (2024) ("Pure omissions are not actionable under Rule 10b-5(b)"); *Goucher v. Iterum Therapeutics plc*, 648 F. Supp. 3d 962, 972 (N.D. Ill. 2022).

Here, Mr. Driscoll had no duty to say anything about Walgreens' plans regarding future clinic openings because he made no affirmative statement about clinic openings that may have been rendered misleading by the omission of those plans. *Macquarie*, 601 U.S. at 266; *Goucher*, 648 F. Supp. 3d at 972. Plaintiffs cannot salvage a claim regarding statement 68 by pivoting to an omission theory untethered from any affirmative statement by Mr. Driscoll.

Plaintiffs also claim that the Motion does not provide "any explanation of: (1) what Defendants contend Driscoll meant by his statement; (2) what a reasonable investor would 'think' Driscoll meant; and (3) how Driscoll's response represents a denial of the clinic milestones." Opp. 12. This is simply an attempt by Plaintiffs to distract the Court from the actual words spoken on the audio recording. Defendants have no obligation to explain what Mr. Driscoll meant or what

6

a reasonable investor would think when the actual words spoken on the audio recording show that, contrary to Plaintiffs' allegation, Mr. Driscoll did not affirm the targets.

Because the actual statement made by Mr. Driscoll at the September 2023 investor conference is not alleged—and could not be alleged—to be false or misleading when made, reconsideration of the Court's Order as to statement 68 and dismissal of the statement and its speaker, Mr. Driscoll, are warranted.

### III. Plaintiffs' Argument that Reasonable Minds Could Differ Fails

Inching even closer to acknowledging that the audio recording contradicts their allegation regarding statement 68, Plaintiffs say the audio recording presents a factual dispute that should be addressed in discovery, not by a motion for reconsideration. This is not simply a factual dispute. There is no conflicting evidence concerning what Mr. Driscoll said. *Stringel v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 415, 430 (7th Cir. 1996) ("[I]t is the tape recording of the conversation that constitutes evidence of what was said, not the transcript"). The audio recording memorializes exactly what Mr. Driscoll said, and it shows he did not reaffirm the target. It would be a waste of time, money, and resources to require the parties to take discovery relating to a statement that was never made, and it likewise would be fundamentally unfair to require Mr. Driscoll to remain a defendant in this case based on an alleged statement the audio recording proves he never made.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider its January 5, 2026 Order solely as to statement 68.

7

Dated: March 9, 2026

By:    */s/ Brian M. Lutz*         

GIBSON, DUNN & CRUTCHER LLP
Brian M. Lutz
One Embarcadero Center
Suite 2600
San Francisco, CA 94111
Tel: (415) 393-8200
blutz@gibsondunn.com
(*admitted pro hac vice*)

Jessica Valenzuela
310 University Avenue
Palo Alto, CA 94301
Tel: (650) 849-5282
jvalenzuela@gibsondunn.com
(*admitted pro hac vice*)

HONIGMAN LLP
Paula E. Litt
Molly McGinley
321 N. Clark Street
Suite 500
Chicago, IL 60654
Tel: (312) 701-9300
plitt@honigman.com
mmcginley@honigman.com

*Counsel for Defendants*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2026, I served this motion on counsel for Plaintiffs via the court's electronic filing system.

/s/  *Brian M. Lutz*
　　Brian M. Lutz