**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE WALGREENS BOOTS ALLIANCE, INC., SECURITIES LITIGATION | Case No.: 1:24-cv-05907-MMR<br><br>CLASS ACTION<br><br>Hon. Mary M. Rowland |

**JOINT STATUS REPORT PURSUANT TO COURT ORDER (ECF NO. 107)**

# I. Discovery

**A. Plaintiffs' Position**: Discovery was stayed until the Court's Memorandum Opinion and Order granting in part, and denying in part, Defendants' motion to dismiss ("MTD Order") ECF No. 78. Since the discovery stay lifted, Plaintiffs' discovery efforts have principally included:

i. Served two sets of requests for production of documents on February 5 and April 27, 2026, respectfully ("First RFPs" and "Second RFPs"); a set of interrogatories on February 10, 2026; and a set of requests for admissions on February 13, 2026; met with Defendants and exchanged correspondence regarding their deficient responses and objections to same;

ii. Served subpoenas *duces tecum* on relevant third parties, including Village Practice Management Company, LLC ("VillageMD"), other Walgreens affiliates, consultants disclosed by Defendants in discovery, and numerous analysts that reported on Walgreens;

iii. Proposing a search protocol for the collection of Defendants' documents on March 20, 2026 containing proposed custodians and search terms, and making a custodian counterproposal on April 28, 2026, and a search term counterproposal on May 6, 2026;

iv. Serving responses and objections to Defendants' first sets of document requests and interrogatories on April 2, 2026, and producing responsive documents; and

v. Filing a motion to compel documents from VillageMD in the District of Delaware on May 8, 2026, and a motion to transfer that motion to compel to this Court. *See Collins et al v. Village Practice Management Company, LLC*, 1:26-mc-00288-MN (D. Del.).

However, discovery progress has been stunted by Defendants' unduly narrow view of the scope of discovery, their drawn-out response times, and their miniscule document productions. For instance, Defendants are standing on an objection that discovery should generally be limited to "building and opening" co-located clinics—*i.e.*, the physical construction of the clinics as opposed to their performance and impact on Walgreens' financial condition—and even with respect to these indisputably core issues Defendants refuse to produce or even search for evidence created outside an approximately one year timeframe (June 1, 2022 to September 21, 2023). Additionally, Defendants' blanketly refuse to produce any discovery prior to June 1, 2022, or to run any custodial searches across a broad range of critical topics. More specifically:

- Despite over four months of discovery, Defendants only produced 1,779 documents, over a third of which are analyst reports (~633), 23 are junk files (*e.g.*, logos) and only 126 emails or messages. Defendants have produced only 25 documents for which Defendants Brewer, Kehoe, and Driscoll are custodians (5, 2, and 18 respectively).

- Defendants did not propose a search protocol in the first instance. Thus, Plaintiffs proposed initial sets of 37 search strings and 30 individual custodians on March 20, 2026. Defendants responded on April 3, 2026, offering just 4 custodians—until reluctantly adding defendant Driscoll on April 17, 2026. Further, despite a universal document destruction policy of aggressive auto-deletion,[1] Defendants refuse to specify the date range for which custodial files have been preserved for Plaintiffs' proposed custodians. *Clearly, it makes no sense to negotiate document custodians without knowing if their documents have been preserved—and if so, for what period.* Defendants did not make a search term counterproposal until April 28, 2026—refusing to run custodial searches for 26 of Plaintiffs' 37 proposed search strings, limited to their 5 agreed custodians. On May 6, 2026, Plaintiffs counter-proposed search terms and, to assess Defendants' claim of burden, requested hit reports for both Plaintiffs' and Defendants' search strings against only the five custodians Defendants agreed to, using with one exception Defendants' time period. Defendants' custodians and search strings—*i.e.*, their ***total proposed production*** of custodial ESI for their initial five custodians—returned ***fewer than 2,000*** unique documents with some strings hitting on ***zero*** unique documents.[2] Moreover, despite this minuscule hit count, Defendants intend to layer an additional review using their unilateral and disputed view of relevance;

- Defendants refuse to produce discovery dated or created between October 14, 2021 and June 1, 2022, despite the fact that the Court relied upon facts allegedly in existence during this time period in its MTD Order sustaining Plaintiffs' claims and without offering to substantiate that doing so would be unduly burdensome;[3] and

- Defendants refuse to run any custodial searches whatsoever to locate relevant documents,

---

[1] Walgreens utilized the following auto-deletion policies: email was retained for only 365 days, unless otherwise specified by a specific custodian on a folder-by-folder basis, and Teams messages were retained for just 30 days. Following an employee's departure, their email was permanently deleted after 30 days and files saved to a custodian's OneDrive were permanently deleted after 45 days. These brisk document destruction polices applied company-wide, absent a litigation hold for a specified individual.

[2] On May 13, 2026, Defendants agreed to three more custodians, including (i) Michelle Borowski, who Plaintiffs had not previously requested, and (ii) Mark Vainisi, a VillageMD employee during Defendants' Relevant Period, and thus, is likely to have created ESI that Walgreens does not purportedly control.

[3] According to the Complaint's well-pled allegations, since inception the co-located clinics were an abysmal failure in every market Walgreens entered, with approximately 70% of clinics failing to meet Walgreens' patient and prescriber targets. Defendants' purported basis for refusing to produce discovery before June 1, 2022 – *i.e.,* because that is when Plaintiffs allege that Walgreens secretly decided to abandon the clinic rollout – ignores that the circumstances preceding that decision are directly relevant to Defendants' scienter, falsity, and the materiality of their allegedly false statements. Defendants' position also ignores that the critical decision to abandon the rollout may, in fact, have occurred ***even earlier*** than Plaintiffs' pre-suit investigation uncovered, and was likely precipitated by extensive discussions at all levels of the Company about the strategy's abject failure, high cost, and whether clinic milestones were "on track" and whether "doubling down" to meet them was the "smart thing." MTD at 32-34 (quoting sustained statements).

emails, Teams chats, and other electronic messaging concerning (i) the operational and financial impact on Walgreens caused by the rollout's abandonment or the inability to staff clinics with physicians and other healthcare providers, (ii) the five corrective disclosures, and (iii) fluctuations in Walgreens' stock price.

Accordingly, Plaintiffs request a Discovery Conference and/or a briefing schedule to address fundamental discovery disputes impeding the just and speedy resolution of this Action and threatening to deprive Plaintiffs of evidence directly probative of their claims. Specifically, Plaintiffs respectfully request the Court order the deadlines proposed in Appendix A hereto addressing the proper scope and timeframe for Defendants' productions and search protocol.

**B. Defendants' Position**: On January 5, 2026, this Court dismissed 77 of Plaintiffs' 80 alleged misstatements. ECF No. 78. Three alleged misstatements on two dates less than a year apart remain. Plaintiffs nonetheless have insisted on sweeping discovery untethered to the issues that remain in the case—demanding Defendants collect and review ESI from 30 custodians using 37 compound search terms and serving 31 third-party subpoenas. Defendants propose conducting discovery in a methodical, efficient manner that prioritizes key documents and custodians—and have already begun producing documents from key data sources.

Plaintiffs complain about the "slow pace" of Defendants production of priority documents. This is absurd. Even without an agreement on custodians or search terms, Defendants have proactively kickstarted document discovery by searching and producing documents from key repositories at a pace of more than one production per week. ***Defendants have already produced approximately 20,971 pages of documents***—including Board materials, SharePoint files, and voluminous documents from Teams channels. Defendants have prioritized the most relevant materials to move this case forward and to facilitate meet-and-confer discussions regarding appropriate custodians and search terms. Plaintiffs do not, and cannot, contest that the materials produced to date are relevant to the claims at issue. Plaintiff further assert that it is Defendants'

position that "discovery should generally be limited to 'building and opening' co-located clinics." That is simply false, as Defendants and the thousands of pages of documents Defendants already have produced make clear. And Plaintiffs have complained about their discovery efforts regarding VillageMD. VillageMD is fully independent of Walgreens. Since August 2025, Walgreens has no ownership interest in, or control over, VillageMD. Walgreens never had control of VillageMD's documents. As produced documents make clear, VillageMD has always been a separate corporate entity with its own employees, systems, and operations. Defendants have produced and will continue to produce documents in Walgreens' possession, custody or control about VillageMD that are responsive, non-privileged and relate to the issues remaining in the case.

Defendants have undertaken the following additional discovery efforts to date:

i. Served Defendants' first set of requests for the production of documents and first set of interrogatories on March 3, 2026; and corresponded with Plaintiffs concerning deficiencies in their responses and objections;

ii. Served a subpoena *duces tecum* on The Edgar Lomax Company, Plaintiff Fire & Police Employees' Retirement System of the City of Baltimore's investment advisor;

iii. Made custodian counterproposals on April 3, 2026, April 18, 2026, and May 13, 2026, and a search term counterproposal on April 28, 2026;

iv. Agreed to review and produce documents for eight custodians using search terms shared with Plaintiffs without waiting for agreement on broader search terms and custodians;

v. Requested that Plaintiffs confirm whether they intend to rely on any confidential witness discussed in the Complaint but omitted from their Rule 26(a) initial disclosures, which Plaintiffs have not answered; and

vi. Served responses and objections to Plaintiffs' First RFPs, ROGs, and RFAs; exchanged extensive correspondence with Plaintiffs concerning those responses and objections; and served supplemental responses to Plaintiffs' ROGs on May 14, 2026.

While the meet-and-confer process for the discovery disputes raised in Plaintiffs' position above is ongoing, Defendants address each below for the Court's benefit:

- Plaintiffs' demand for pre-June 2022 documents is unreasonable. Plaintiffs allege that a hold on clinic openings—a fact central to the surviving claims—occurred in mid-2022. Defendants agreed to produce documents from June 1, 2022 through July 26, 2024—a period beginning nearly five months *before* the first alleged misstatement. Plaintiffs have identified no specific categories of documents outside this timeframe that are relevant to

the remaining claims and proportional to the narrow scope of the remaining case. Defendants remain open to considering a broader time period for specific document requests where Plaintiffs articulate a specific reason for doing so—they have not done so.

- Plaintiffs insist that Defendants run 37 compound search terms against 30 custodians (four of whom they have now abandoned).[4] Defendants have agreed to eight custodians, with proposed terms that are focused on the issues that remain. Plaintiffs' proposed terms run against only 5 custodians yield 109,098 total hits (including families), nearly *seventeen times as many documents* as Defendants' tailored terms. Plaintiffs further demand that all documents that hit on a term be produced, regardless of responsiveness. This position has no support in the Federal Rules. Defendants will produce *responsive* and non-privileged documents as required. Plaintiffs have demanded details about each custodian's ESI preservation and sources. Defendants are unaware of any preservation issues, and Plaintiffs offer no valid basis that would justify this improper discovery on discovery.
- Plaintiffs also complain that Defendants have not agreed to run custodial searches for certain categories of ESI. Defendants have produced documents directly addressing those topics—including weekly implementation status reports for the VillageMD rollout, clinic opening and closing schedules, Board-level financial reports, and earnings materials. The VillageMD financial impact documents Plaintiffs identify relate only to claims the Court dismissed. And Defendants have agreed to produce documents related to each alleged corrective disclosure, including transcripts, press releases, SEC filings, and drafts thereof.

The discovery conference and court-imposed discovery deadlines that Plaintiffs request are unnecessary and premature. Meet-and-confer discussions are ongoing, and Defendants continue to produce documents on a rolling basis—productions designed to inform those negotiations and narrow or resolve any remaining disputes. Plaintiffs' positions to date do not reflect a review by Plaintiffs of the documents Defendants proactively produced. Seeking Court intervention before the meet and confer process has run its course is inconsistent with Local Rule 37.2 and this Court's standing order. The parties agreed to—and the Court ordered—a substantial completion deadline of December 1, 2026. Plaintiffs offer no valid basis for departing from this schedule.

## II. Settlement

To date, the Parties have conferred regarding the timing of potential settlement discussions but do not believe that a settlement conference would be productive at this time.

[4] For example, one compound search term that Plaintiffs demanded Defendants run required Defendants' e-discovery vendor to break the search into **24 separate searches** and hit on **170,240 documents**.

Dated: May 14, 2026

DITOMMASO LUBIN, P.C.

By: */s/ Peter S. Lubin*
Peter S. Lubin (Bar No. 6185789)
17W220 22nd Street, Suite 410
Oakbrook Terrace, IL 60181
Tel.: (630) 333-0333
Email: peter@d-l.law

LAW OFFICE OF TERRENCE BUEHLER
Terrence Buehler (Bar No. 6181738)
417 North Marion Street
Oak Park, IL 60302
Tel.: (312) 371-4385
Email: tbuehler@tbuehlerlaw.com

*Liaison Counsel for Lead Plaintiff Christopher G. Collins and the Class*

LEVI & KORSINSKY, LLP
Shannon L. Hopkins (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
Morgan M. Embleton (admitted *pro hac vice*)
Amanda D. Foley (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com
Email: membleton@zlk.com
Email: afoley@zlk.com

-and-

Elizabeth K. Tripodi (admitted *pro hac vice*)
1101 Vermont Avenue, NW Suite 800
Washington, D.C. 20005
Tel.: (202) 524-4290
Fax: (212) 363-7171
Email: etripodi@zlk.com

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Brian Lutz*
Brian Lutz
One Embarcadero Center
Suite 2600
San Francisco, CA 94111
Tel: (415) 393-8200
blutz@gibsondunn.com
(admitted *pro hac vice*)

Jessica Valenzuela
310 University Avenue
Palo Alto, CA 94301
Tel: (650) 849-5282
jvalenzuela@gibsondunn.com
(admitted *pro hac vice*)

HONIGMAN LLP
Molly McGinley
155 North Wacker Drive
Suite 3100
Chicago, IL 60606-1734
Tel: (312) 701-9300
plitt@honigman.com
mmcginley@honigman.com

*Counsel for Defendants*

*Lead Counsel for Lead Plaintiff*
*Christopher G. Collins and the Class*

SAXENA WHITE P.A.
Maya Saxena (admitted *pro hac vice*)
Scott Guarcello (admitted *pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
Email: msaxena@saxenawhite.com
Email: sguarcello@saxenawhite.com

-and-

David R. Kaplan (admitted *pro hac vice*)
Emily R. Bishop (admitted *pro hac vice*)
505 Lomas Santa Fe Dr., Suite 180nSolana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096
Email: dkaplan@saxenawhite.com
Email: ebishop@saxenawhite.com

-and-

Marco A. Dueñas (admitted *pro hac vice*)
Sara DiLeo (admitted *pro hac vice*)
10 Bank Street, Suite 180
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
Email: mduenas@saxenawhite.com
Email: sdileo@saxenawhite.com

*Counsel for Plaintiff the Fire & Police Employees' Retirement System of the City of Baltimore and Additional Counsel for the Class*

COHEN MILSTEIN SELLERS & TOLL PLLC
Carol V. Gilden (Bar No. 6185530)
190 South LaSalle Street
Suite 1705
Chicago, IL 60603

Tel.: (312) 629-3737
Fax: (312) 357-0369
Email: cgilden@cohenmilstein.com

*Liaison Counsel for Plaintiff the Fire & Police Employees' Retirement System of the City of Baltimore*

## APPENDIX A

| EVENT | DEADLINE |
|---|---|
| Defendants to Disclose the Timeframes during which ESI for each of Plaintiffs' Proposed Custodians has been Preserved | May 21, 2026 |
| Defendants to Provide Hit Reports Using Plaintiffs' Proposed Search Terms and Plaintiffs' Relevant Period Across Agreed Custodians | May 21, 2026 |
| Motions to Compel Concerning Unresolved Issues Raised in this Joint Status Report, including the Proper Scope and Relevant Period for Discovery from Defendants and the Proper Content and Scope of the Search Protocol for Defendants' Production (limited to 25 pages) | June 4, 2026 |
| Responses to any Motions to Compel Concerning Issues Raised in this Joint Status Report (limited to 25 pages) | June 18, 2026 |
| Discovery Hearing on Motions to Compel | At the Court's earliest convenience |